BEDGOOD & ROYAL *v.* McLAIN.

94   283|
124  188|

1. Although a minor of very tender age may, at the time of his father's death, be temporarily residing with another person in a county other than that in which the father was domiciled and in which he died, and may continue to so reside after the father's death, the ordinary of the county of the deceased father's domicile had jurisdiction, upon the application of the person with whom the minor was thus residing, to appoint him guardian of the minor, there being nothing to show that the minor's domicile had, during the father's lifetime, become different from that of the father by reason of a relinquishment by the latter of his parental authority to the other person, and the applicant for the guardianship, by applying to the ordinary of the county in which the father died, recognizing and conceding that no change in the minor's domicile had taken place.

2. Where a lot of wild land was sold for taxes by virtue of an execution issued by the comptroller-general under the provisions of the act of February 28th, 1874 (Acts of 1874, p. 105), the presumption, in the absence of sufficient evidence to the contrary, is that the comptroller-general complied with his duty as to advertising as required by the 6th section of that act, as amended by the act of March 2d, 1875 (Acts of 1875, p. 119); and this presumption is not overcome by exhibiting three copies of a newspaper dated, respectively, in three successive weeks, and published at the capital of the State, in each of which appears a proper advertisement that the lot in question was in default for taxes, without also exhibiting other copies of the newspaper printed during the weeks immediately before and immediately after the three weeks mentioned, and not containing such advertisement, or else showing that no such copies were issued. The mere fact that the files of the newspaper, kept in the office in which it was printed, contained no copies of given dates, would not, of itself, be sufficient evidence that no copies of the paper were in fact printed and issued on those dates.

3. Irrespective of the various questions raised in the motion for a new trial, the verdict, for the reasons indicated in the foregoing notes, was wrong on the substantial merits of the case, and the court erred in refusing to grant a new trial.

August 14, 1894.

Equitable petition. Before Judge FISH. Dooly superior court. March term, 1893.

For a former report of this case see 89 *Ga.* 793.

BUSBEE & CRUM, WILLIAM BRUNSON and J. H. MARTIN, for plaintiffs in error. G. W. WOOTEN, J. W. HAYGOOD and GUSTIN, GUERRY & HALL, *contra*.

LUMPKIN, Justice.

It appears that S. J. McLain, under a regular chain of title from the State down to himself, was the owner of a lot of wild land in Dooly county on October 23, 1870. He died while seized of this lot, and Hugh McLain, who was his son and only heir at law, became of age in 1889 or 1890. In 1877 the comptroller-general, under the provisions of the act of February 28, 1874 (Acts of 1874, p. 105), as amended by the act of March 2, 1875 (Acts of 1875, p. 119), issued an execution against this particular lot for its taxes for the years 1874, 1875 and 1876. The land was levied upon by the sheriff, and after due advertisement, was legally sold in 1878 to one Clements, under whom Bedgood & Royal now hold. Hugh McLain brought the present action against them to restrain them from trespassing upon the lot, for the recovery of the value of timber which they had cut and removed from the same, and for the cancellation of their paper title to the lot. There was a verdict for the plaintiff, and the defendants assigned error upon the overruling of their motion for a new trial.

1. The act of 1874, above mentioned, made it the duty of the comptroller-general, upon receipt of the several digests of the receivers of tax returns, to make

out a complete list of all the unimproved or wild lands in this State not given in for taxes; and after completing the list, to make advertisement of such lands for thirty days in one newspaper published at the capital of the State, and in such advertisement require the owners of said lands to come forward and give in and pay the taxes on the same.

By the act of 1875, already cited, the time during which the publication was to be made was changed from "thirty days" to "once a week for four weeks."

After the expiration of the time of advertisement, it became the duty of the comptroller-general, under the act first mentioned, to issue executions against all wild lands not returned for taxation. The 9th section of that act provided that "no sale made under this act shall in any manner operate to affect or defeat the title of any idiot or lunatic or minor who has no legal representative."

It will have been observed that at the time of the sheriff's sale of the lot in controversy, Hugh McLain, its owner, was a minor; and one of the controlling questions is whether or not, at the time of that sale, he had a lawfully appointed guardian. It appears that in 1873 or 1874, one Mize was appointed guardian of Hugh McLain, who was then a mere child, by the ordinary of Miller county. At that time, Mize was residing in Randolph county. S. J. McLain died about one year before Mize was appointed guardian of his son. At the time of his death, the elder McLain resided and was domiciled in Miller county, to which county he had recently removed from Randolph. In point of fact, Hugh McLain had never personally resided in Miller county at any time before the appointment of his guardian, and only in so far as his residence was legally incidental to that of his father could he be said to have been a resident of that county. Under this state of facts, did the ordinary

of Miller county have jurisdiction to grant the letters of guardianship?

We think he did. According to section 1693 of the code, the domicile of every minor is that of his father (if alive), unless such father has voluntarily relinquished his parental authority to some other person. There was no evidence to show that the elder McLain had ever done this. At most, it only appears that he was permitting his child to reside temporarily with Mize. Therefore, when McLain died, the domicile of the child was in Miller county. The mere fact that he continued to reside with Mize in Randolph county after the father's death, would not of itself be sufficient to change his lawful domicile in Miller; and by applying to the ordinary of that county for letters of guardianship, Mize recognized and conceded that no change in the minor's domicile had taken place. We therefore think the appointment of the guardian was valid. Consequently, the 9th section of the act of 1874, above quoted, has no application, and the sale by the sheriff under the comptroller-general's execution was good, if otherwise free from legal objection to its validity.

2. In the absence of sufficient evidence to the contrary, the law presumes that the comptroller-general complied with his duty as to advertising as required by the acts cited in the first division of this opinion, and the burden of proof was upon the plaintiff to show that he did not. An attempt to do this was made by exhibiting in evidence three copies of the Atlanta Constitution, published, respectively, in three successive weeks before the issuing of the comptroller-general's execution, in each of which copies appears a proper advertisement of the lot in controversy as being in default for taxes. This, in our opinion, was not sufficient to show a failure to advertise once a week for four weeks, without producing other copies of the same paper published

during the weeks immediately before and immediately after the three weeks mentioned, and showing that neither of them contained the advertisement, or else by proving that no such copies were in fact issued. If they were issued, there is certainly at least as much presumption that one or the other of them contained the advertisement, as that neither did contain it, and it was incumbent on the plaintiff to show affirmatively the absence of the advertisement from both. As he did not produce such copies, his next contention was that, in point of fact, they were never issued, and this he attempted to establish by showing that an examination of the files of the Constitution, kept in the office where that paper was printed, contained no such copies. This itself was insufficient to establish that such copies were not in fact printed and issued. It would be a very easy thing, after a newspaper was printed and placed on file, to remove it; or, it might be, that by inadvertence, oversight or neglect, a particular issue of the paper may never have been placed upon file in the newspaper office. Indeed, such a thing is far more probable than that a newspaper regularly published had no issue on a given date, or dates, upon which, in due course of business, copies of it ought to have been printed and circulated. So we think the plaintiff failed to show that the comptroller-general's advertisement was not duly published, and the presumption that it was must stand.

This disposes of the only remaining material objection to the validity of the sheriff's sale.

3. Numerous other questions were raised by the motion for a new trial; but irrespective of all of them, we have shown that the verdict was wrong on the substantial merits of the case. We therefore grant a new trial without discussing the grounds of the motion in which these other questions are presented.

*Judgment reversed.*