## EARLY COUNTY v. BAKER COUNTY.

The statute making provision for the delineation of a disputed county line (Civil Code (1910), §§ 473, 474, 475) is not violative of the constitution of Georgia, article 1, section 1, paragraph 23, because it is an attempt to confer judicial power upon the Secretary of State. The statute was not intended to provide a special court in which the counties were invited to litigate over their territorial boundaries, but devised a process by which the State would be enabled to ascertain the true boundary between its political subdivisions. The function of the Secretary of State in this process is of a political and not of a judicial nature.

NOVEMBER 15, 1911.

Certified question; from Court of Appeals.    3431.

*Pope & Bennet* and *R. H. Sheffield,* for plaintiff in error.

*A. S. Johnson* and *Benton Odom,* contra.

EVANS, P. J.    The Court of Appeals certifies the following question of constitutional law: "Is the act of 1899 (Acts 1899, p. 24) contained in the Civil Code (1910), §§ 473, 474, 475, unconstitutional and void, for the reason that the statute in question is an attempt to confer upon the Secretary of State, who is a person discharging executive powers, the right to exercise a judicial function, in violation of article 1, section 1, paragraph 23, of the constitution of the State of Georgia, which provides that 'The legislative, judicial, and executive powers shall remain forever separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others'?"

Counties are political subdivisions of the State, established as auxiliaries in the important business of local government.    Public duties are required of them as part of the machinery of the State; and in order that they may better perform such duties, they are vested with certain corporate powers.    Their functions are wholly of a public nature, and at all times they are subject to the will of the legislature, unless there is some constitutional restraint. Laramie County v. Albany County, 92 U. S. 307 (23 L. ed. 553). It is essential to the existence of a county that its boundaries be defined.    It rests with the legislature of the State not only to originally define the boundaries, but also to provide means whereby the true localities of such boundaries on the ground may be finally determined.    11 Cyc. 346.

As the delineation of the boundaries in the establishment of a county is a political function of government, likewise the discov-

ery of an original boundary line and its re-establishment as such is a political function. The legislature may provide various means to find the location of a boundary, which from the lapse of time or other cause may have become obscure or uncertain. It may provide for a survey and may stipulate that such survey shall be final and conclusive as to the true location. Or a commission may be appointed to discover the boundary as originally located. If the legislature adopts the course of locating the indistinct or uncertain boundary by a survey, it may provide for its verification by a second survey or by a revision of it by civil engineers or by a ministerial official. Should the legislature enact that a disputed boundary line between counties should be ascertained by a survey made by the county surveyor of any adjoining county, and that such survey would be conclusive when approved by a civil engineer appointed by the Governor, could it be contended that it was intended to constitute the civil engineer a special court and that his function in approving the survey was of a judicial nature, subject to review by the courts? Clearly not. Yet in the performance of the duty of verifying the accuracy of the survey, the engineer necessarily would have before him the notes of the surveyor and other data to enable him to approve or disapprove the correctness of the survey. Carry the illustration a step further. Would it make any essential difference in the nature and character of the engineer's function if he were authorized to acquire information from any available source in arriving at his conclusions? We do not think so, because, it being competent for the legislature to provide for the re-establishment of the uncertain line by survey in the first instance as a ministerial act, its revision is none the less a ministerial act because the revisory engineer may search out information in determining the correctness of the survey submitted to him.

The statute respecting the settlement of disputed county lines provides that when the grand jury of either county shall present that the disputed line requires to be marked out and defined, the clerk of the superior court shall certify the presentment to the Governor, who shall appoint a suitable and competent surveyor who does not reside in either county, to survey, mark out, and define the boundary line in dispute and return a plat of his survey to the Secretary of State's office. Within thirty days of the filing of the plat, the authorities of either county dissatisfied therewith may file a

written protest or exception to the same.   Upon the filing of a protest the Secretary of State shall notify the ordinary or county commissioners of the respective counties of the time when he will hear the contest, and upon the hearing "he shall determine from the law and evidence the true boundary line in dispute between the respective counties."   "Upon such decision being made by the Secretary of State, or in case no protest or exceptions are filed within the thirty days aforesaid, he shall cause the survey and plat to be· recorded in a book to be kept for that purpose; whereupon the same shall be final and conclusive as to the boundary line in dispute." Civil Code (1910), §§ 472-476.   The statute did not contemplate a lawsuit between the counties; it devised a process by which the line as originally fixed by the legislature in the formation of the counties shall be ascertained and made certain.   Counties have no territorial rights as against the State, and the statutory plan was not to settle a private dispute between the counties, but to afford means to the State in the delineation of the boundaries between its political subdivisions.   If the decision of the Secretary of State is to have the ordinary force and effect of a judgment rendered in a judicial proceeding, then territorial rights would become vested, and the legislature could not make a change so as to disturb or alter the divisional line as adjudged by the Secretary of State.   Whereas all the authorities concur, that, unless the constitution of a State otherwise prescribes, the legislature has the power to diminish or enlarge the area of a county, or change its boundary lines, whenever the public convenience or· necessity requires..   Laramie County *v.* Albany County, supra.   "While the departments of government must be kept separate and distinct, it is impossible to draw a mathematical line by which every action can be exactly classified; and there are some matters which do not inherently and essentially appertain to one department of government rather than to another. As a part of this ground has been considered the impossibility of conducting a government at all without permitting executive officers to exercise some discretion, or legislatures or courts to do some things incidental to their general purpose, but which in a ·literal sense are not strictly the enacting of laws or the rendering of judgments."   *Southern Railway Co.* v. *Melton,* 133 *Ga.* 282 (65 S. E. 665).   The scope of the legislation is to ascertain the location of a line which the legislature had previously established, and the means

provided to accomplish this end did not contemplate an invitation to counties to engage in a lawsuit over the State's territory. The legislature in its wisdom might have enacted that a survey of the disputed line should be had and a report thereof made to its next session, when, upon the basis of that report, as well as other accessible data, it would by enactment finally locate the uncertain or disputed line. In such a case it could hardly be said that the legislature was usurping judicial functions merely because it reserved the right through committee or otherwise to hear evidence as to the true location of the line. If the legislature may by direct enactment, where not restrained by the constitution, locate the disputed line, then it may provide machinery whereby the administrative branch of the government may carry out the legislative act by ascertaining the facts upon which the enactment is to operate. And this is practically what was done by the act under review.

The act of 1897 (Civil Code (1910), § 501) provided for the filing, hearing, and determining of contests in elections held for the removal of county sites, and conferred upon the Secretary of State the power and made it his duty to hear and determine such contests on evidence previously taken under the terms of the act; and it was held that the duty of hearing and passing upon the questions raised in such a contest by the Secretary of State pertained largely to matters of a political nature and properly exercisable by an executive officer of the government, and was not opposed to paragraph 23, section 1, article 1 of the constitution. *Bowen* v. *Clifton,* 105 *Ga.* 459 (31 S. E. 147). The principle involved in this decision is applicable to the question in hand. For the reasons given, we do not think the act offends the cited paragraph of the constitution.

*All the Justices concur, except Beck, J., absent, and Hill, J., not presiding.*