FINE *v.* DADE COUNTY *et al.*

No. 15006. NOVEMBER 21, 1944. REHEARING DENIED DECEMBER 4, 1944.

*J. N. Hunter* and *R. Noel Steed,* for plaintiff.
*Wright & Fullbright,* for defendant.

DUCKWORTH, Justice.  By an act of 1837 (Ga. L. 1837, p. 65), provision was made for creating Dade County out of that part of Walker County lying west of Lookout Mountain, it being enacted that "from and immediately after the passage of this act, the inferior court of the county of Walker shall be authorized and required to cause to be ran [sic] and plainly marked a line as hereinafter designated, beginning at lot one, in the ninth district of the fourth section, originally Cherokee now Walker County, thence a southwest direction for its general course, so as to run as near as possible on the middle of the top of the Lookout Mountain until it strikes the line of the State of Alabama, at or near lot No. one hundred and forty-five (145) in the eighteenth (18) district of the fourth section, and all that portion of said county lying west of and northwest of the aforesaid line shall constitute a new county, to be called Dade." This court will take judicial cognizance of the fact that Walker and Dade Counties now exist as adjoining counties in this State, Walker County being east of Dade County.

According to a plat of survey made by A. A. Simonton and Kieffer Lindsey in August, 1944, the "middle of the top of the Lookout Mountain" has been located as being along the general course of a line which is equidistant from the eastern and western

brows of a plateau on the top of the mountain. According to this plat, the line is 3432 feet from the eastern brow of the plateau and a similar distance from the western brow. The eastern boundary of the petitioner's land is 2167 feet west of the line between the counties as surveyed by Simonton and Lindsey. The western boundary of his land lies along the eastern side of Lookout Mountain Scenic Highway, a distance of 707 feet from the western brow of the plateau, and hence, if that survey be correct and of probative value, the petitioner's land lies wholly in Dade County.

By the stipulation of facts between the parties, it is agreed: By general reputation and understanding for a period of forty years or more the line between Walker and Dade Counties has lain to the westerly side of the petitioner's land, and hence, under such reputation and understanding, his land would lie wholly in Walker County, the line between the counties being along the easterly side of Lookout Mountain Scenic Highway, which highway is shown on the Simonton plat hereinbefore referred to, and which line is shown by a Branner survey hereinafter referred to as being the line between the counties. Other than Simonton and Lindsey, no person can be found who will testify as to the actual location of the line by measurement or survey. There has been found in the office of the Secretary of State a plat with field notes made by one Branner; this survey, according to copy of an executive order under date of September 23, 1892, having been made by appointment and direction of the Governor. If this survey is correct, the land of the petitioner lies wholly in Walker County.

The trial judge reached the following conclusions: General reputation and understanding must yield to an actual survey and measurement. The plat and field notes of Branner are without legal effect as establishing the line, for the reason that it does not appear that the survey was made in accordance with the statute, and they can not be considered as public records. The middle of the top of Lookout Mountain and the boundary line between the two counties is to be determined by measurement from brow to brow, the line being the center of such measurement, and brow meaning the point at which the plateau breaks first sharply towards the valley and not meaning either the escarpment upon the side of the mountain or the tops of hills upon the top of the plateau of the mountain. Therefore, the trial judge ruled that the only proof

as to the line was the survey and testimony of Simonton and Lindsey, showing the true line as being 2167 feet east of the eastern boundary of the petitioner's land, thus placing his property wholly within Dade County, and accordingly holding that a denial of the injunction was demanded as a matter of law.

The act of 1887 (Ga. L. 1887, p. 106), making provision for settlement of a disputed county line is codified as sections 23-401 to 23-408, inclusive. Section 23-401 provides: "Whenever the boundary line between two or more counties shall be in dispute, and the grand jury of either county shall present that the same requires to be marked out and defined, it shall be the duty of the clerk of the superior court in the county where such presentments were made to certify such presentments to the Governor, and the Governor shall appoint some suitable and competent surveyor who shall not reside in either county, to survey, mark out, and define the boundary line in dispute, and return such survey with plat to the Secretary of State's office to be recorded in a book to be kept for that purpose." Section 23-402 provides for notice to be given by the surveyor to the proper county authorities of the time and place of the intended survey. Section 23-403 provides that he shall furnish the proper county authorities with a copy of the survey and plat. Section 23-404 provides: "The survey with plat, made and returned to the Secretary of State, shall be filed, but not recorded for the space of 30 days from the date of its reception in his office, and the entry of filing made thereon, for the purpose of allowing the authorities of either county dissatisfied therewith to file a protest or exceptions thereto within that time." Section 23-405 provides: "In case such protest or exceptions is filed in the Secretary of State's office within the 30 days, it shall be the duty of the Secretary of State to give 10 days' written notice through the mail to the ordinaries or chairmen of the board of county commissioners of the respective counties, of the time when he will hear the same at his office, and upon hearing the contest he shall determine from the law and evidence the true boundary line in dispute between the respective counties." Section 23-406 provides: "Upon such decision being made by the Secretary of State, or in case no protest or exceptions are filed within the 30 days aforesaid, he shall cause the survey and plat to be recorded in a book to be kept for that purpose, whereupon the same shall be final and conclusive as to the boundary line in dispute."

There is no affirmative evidence that, in ordering the Branner survey in 1892, the Governor acted upon a request from a grand jury of either of the counties. It is settled law, however, that a public officer is presumed, until the contrary appears, to have properly performed his official duties and not to have exceeded his authority. *Grannis* v. *Irvin,* 39 *Ga.* 22; *Bedgood* v. *McLain,* 94 *Ga.* 283 (2) (21 S. E. 529); *Greer* v. *Fergerson,* 104 *Ga.* 552 (30 S. E. 943); *Durrence* v. *Northern Nat. Bank,* 117 *Ga.* 385, 388 (43 S. E. 726); *Connolly* v. *Atlantic Contracting Co.,* 120 *Ga.* 213 (2) (47 S. E. 575); *Davis* v. *Baldwin,* 185 *Ga.* 40, 41 (1) (193 S. E. 892); *Hogg* v. *Rome,* 189 *Ga.* 298, 302 (6 S. E. 2d, 48). "The presumption that every public officer has performed his duty in the manner prescribed by law applies in the instance of the governor of a State, to the extent that the court will resolve all doubts in his favor in order to support the validity of his acts. The presumption that every public officer does his duty is especially strong in the case of the governor, the chief executive officer of an independent State." 20 Am. Jur. 180, § 173. Under the statute relating to the fixing of a line between counties in case of a dispute it would be the duty of the Governor, before making an appointment and ordering a survey, to see that he had before him a request from the grand jury of one of the counties. In ordering the Branner survey in 1892, he will be presumed, under the above authorities, to have acted upon a request from a grand jury either of Dade or of Walker County. The Branner survey and plat are shown to have been filed in the office of the Secretary of State as required by the Code, § 23-404. No other record is in that office touching the location of the line between the two counties. Nothing to the contrary appearing, it will also be presumed that the Secretary of State complied with the provisions of § 23-405, and that no protest was filed with him requiring notice to the proper authorities as to a hearing on the correctness of the survey. No protest having been filed, it was his duty under § 23-406, to cause the plat and survey to be properly recorded, whereupon the same became "final and conclusive as to the boundary line in dispute." Having thus been established by law, the line shown by such survey and plat must remain as the true line until another change shall be lawfully made. *Kennedy* v. *Howard,* 183 *Ga.* 410, 414 (188 S. E. 673). The survey made by Simonton and Lindsey in 1944 is not shown

to have been an official governmental survey, and, therefore, is not of probative value to contradict or impeach the Branner survey which was made under order of the Governor and presumably in full compliance with the statute. The evidence demanded a finding as a matter of law that the true dividing line is that shown by the Branner survey and plat, and that the land of the petitioner lies wholly in Walker County rather than in Dade County. Accordingly, the trial judge erred in ruling that the only evidence to be considered was that of the Simonton and Lindsey survey and testimony, and that a finding was demanded as a matter of law that the land of the petitioner was wholly in Dade County, and in refusing to grant the injunction.

It might be added that whether or not the middle of the top of Lookout Mountain should be ascertained by locating a line equidistant from the east and west brows of the plateau on the top of the. mountain is a question not necessary to be here decided. Whether or not the line as run by Branner was so determined by him or by other considerations, the line has nevertheless been fixed as the true line and without any apparent protest from either county at the time of the survey. This conclusiveness is not altered by the fact that Simonton testified by affidavit that he was unable to trace the Branner survey and by it determine the line between the counties. If in fact it is obscure, the. line must be made clear and definite by an official governmental survey under order of the Governor in accordance with the act of 1887, supra, and not by the evidence of engineers or surveyors privately engaged.

*Judgment reversed. All the Justices concur.*

### ON MOTION FOR REHEARING.

DUCKWORTH, Justice. In the opinion of this court it was stated, with citations of authorities, that it will be presumed, until the contrary appears, that a public officer has properly performed his official duties and not to have exceeded his authority, and that, hence, the Secretary of State complied with the provisions of the statute here involved. The defendants in error filed a motion for rehearing insisting that such ruling "is inconsistent with the authorities and decisions of this court in the cases cited in the brief of counsel for defendants in error before this court of Volume 15 R. C. L., page 881, sec. 359, *Tucker* v. *Harris,* 13 *Ga.* 1, *Patten* v. *Miller,* 190 *Ga.* 123-138, *Davis* v. *Melton,* 51 *Ga. App.* 685, at page

691; and that the court necessarily has overlooked or misconstrued said decisions and judgments in arriving at its judgment in the portion of its opinion above quoted. The two lines of decisions are not and can not be harmonized except by recognizing that those cited by the court refer to ministerial acts, and those cited in our brief apply to judicial or quasi-judicial acts. Movants insist and contend that the decisions cited by the court, in support of the above-quoted portion of its opinion, do not sustain the decision in a case of this character for the reason that the act of 1887 (Acts of 1887, page 106, Code, § 23-401-408, inclusive) constitute the Secretary of the State as a court of limited jurisdiction to determine the disputed line and creates him a court of limited jurisdiction for this purpose; and, therefore, the authorities above cited holding that all facts that are essential to give jurisdiction to a court of limited jurisdiction must be a part of the record, as the cases cited in our original brief and referred to above hold and apply rather than those cited by the court." The authorities relied upon were not overlooked by this court, though not referred to in its decision. However, they have no application here, since the Secretary of State does not under the statute act judicially but acts only politically. *Early County* v. *Baker County,* 137 *Ga.* 126 (72 S. E. 905); *Smith* v. *Baker County,* 142 *Ga.* 168 (82 S. E. 557); *Carey* v. *Stovall,* 143 *Ga.* 705 (85 S. E. 844). As was said in the *Early County* case: "Counties have no territorial rights as against the State, and the statutory plan was not to settle a private dispute between the counties, but to afford means to the State in the delineation of the boundaries between its political subdivisions. If the decision of the Secretary of State is to have the ordinary force and effect of a judgment rendered in a judicial proceeding, then territorial rights would become vested, and the legislature could not make a change so as to disturb or alter the divisional line as adjudged by the Secretary of State. Whereas all the authorities concur, that, unless the constitution of a State otherwise prescribes, the legislature has the power to diminish or enlarge the area of a county, or change its boundary lines, whenever the public convenience or necessity requires."