28222, 28223. THE CITIZENS & SOUTHERN NATIONAL BANK et al. v. INDEPENDENT BANKERS ASSOCIATION OF GEORGIA, INC.; and vice versa.

ARGUED SEPTEMBER 5, 1973 — DECIDED NOVEMBER 15, 1973.

*Alston, Miller & Gaines, Daniel B. Hodgson, Ronald L. Reid, J. Robin Harris, Ben F. Johnson, III, Arthur K. Bolton, Attorney General, H. Andrew Owen, Timothy J. Sweeney, Assistant Attorneys General,* for appellants.

*Martin, Snow, Grant & Napier, Cubbedge Snow, Charles M. Stapleton,* for appellees.

MOBLEY, Chief Justice. In *Independent Bankers Assn. v. Dunn,*

230 Ga. 345 (199 SE2d 129), this court dealt with a suit by the Independent Bankers Association of Georgia, Inc., seeking "to compel the Superintendent of Banks of the State of Georgia (now Commissioner of Banking and Finance (Ga. L. 1972, p. 1198)) to institute civil action against the Citizens & Southern National Bank and the Citizens & Southern Holding Company to enjoin them from allegedly violating the provisions of the Banking Law of Georgia which restrict the stock ownership or control of other banks." It was held that the trial court erred in not issuing a mandamus as prayed.

When the case was returned to the trial court, the judge entered an order setting aside the former order denying mandamus, and directing the Commissioner of Banking and Finance of the State of Georgia "to take appropriate action against the Citizens & Southern National Bank, the Citizens & Southern Holding Company, its subsidiaries and associate correspondent banks to require said banks and holding company to comply with and obey the applicable provisions of the banking laws of the State of Georgia relating to bank holding companies in accordance with the decision of the Supreme Court of Georgia in the above-stated case; . . ."

Following this direction, the court specifically commanded the Commissioner to:

"(a) take appropriate action to require the C & S National Bank, the C & S Holding Company and its subsidiaries, to-wit, the C & S Bank of Albany, the C & S DeKalb Bank, the C & S Bank of Dublin, the C & S Bank of East Point, the C & S Emory Bank, the C & S Bank of LaGrange, the C & S Newnan Bank, the C & S Bank of Thomaston and the officers, directors and wives of officers and directors of said banks and holding company, to divest themselves of shares of voting stock held in the ten associate correspondent banks named in the complaint to the extent that the aggregate number of shares held by the C & S Holding Company together with the officers, directors and wives of officers and directors of said banks and holding company does not exceed five percent of the voting shares in each of the ten associate correspondent banks named in the complaint. It is ordered that such divestiture shall be effected within a reasonable time to be determined by the Commissioner of Banking and Finance, but not later than two years from this date.

"(b) To take appropriate action to require the Citizens & Southern National Bank, the Citizens & Southern Holding

Company, its subsidiaries and its associate correspondent banks to terminate within a reasonable time as determined by the Commissioner of Banking and Finance, but within two years from this date, all loans heretofore made to any former officer or employee of the Citizens & Southern National Bank or of the other banks in the Citizens & Southern system of banks for the purpose of financing the purchase of shares of stock of the last named ten banks in the complaint;

"(c) To take action to require the Citizens & Southern National Bank, the Citizens & Southern Holding Company, its subsidiaries and associate correspondent banks to terminate within a reasonable time as determined by the Commissioner of Banking and Finance, but within two years from this date, all loans heretofore made to any person, partnership, corporation or other entity which was made for the purpose of financing the purchase of shares of stock in the ten banks last named in the complaint which purchases were made within twelve months of the date of acquisition by the Citizens & Southern Holding Company of five percent of the shares in the same bank.

"(d) To take appropriate action to require the Citizens & Southern National Bank to cease holding any stock of the ten banks other than the Citizens & Southern National Bank named in the complaint in a street or fictitious name if the Commissioner of Banking and Finance is satisfied that any such stock is being held in a street or fictitious name for the purpose of defrauding or misleading the Commissioner or the public.

"(e) To take appropriate action to require the Citizens & Southern National Bank and the other banks named in the complaint to cease holding the ten associate correspondent banks named in the complaint out as members of the 'C & S system of banks' or the 'Citizens & Southern System.' "

The banks that were named as defendants in the mandamus action appeal from this judgment and contend that the trial judge was not authorized to give the specific directions contained in the order.

Independent Bankers Association of Georgia, Inc., filed a cross appeal, and contended that the court erred in allowing two years within which the Commissioner shall require stated actions to be taken, and in failing to order the divestiture of shares held by the Citizens & Southern National Bank stockholders in the ten banks in which the Citizens & Southern Holding Company held five percent of the shares in such banks.

This action sought to compel the Commissioner of Banking and Finance to enforce the banking law. The previous opinion of this court construed the banking law and held that under the evidence the Citizens & Southern Holding Company and the Citizens & Southern National Bank were in violation of such law. The opinion did not attempt to direct specific corrective action. The Commissioner is charged with this duty and has the expertise to determine the most appropriate action to eliminate the violations. If his directives are disregarded, he can resort to the courts for enforcement.

In our former decision it was held that two findings were demanded: First. The Citizens & Southern Holding Company was found to be in violation of the banking law because it was wholly owned by the Citizens & Southern National Bank and under the evidence the corporate veil had been pierced. Thus the stockholders of the *Bank* were "persons who otherwise own" the *Holding Company* and their stock in certain "five percent" banks was attributed to the *Holding Company*. The statutory limitation of stock ownership in such "five percent" banks was exceeded thereby and the *Holding Company* was in violation of the banking law.

Second. The Citizens & Southern Holding Company and the Citizens & Southern National Bank were found to be indirectly controlling more than five percent of the stock of certain "five percent" banks. It was held that under the evidence this finding was demanded by the action of certain of its officers and directors in acquiring such stock, selling it to selected individuals and trusts, and in treating such banks as branch banks of Citizens & Southern. It was this finding of illegal indirect control of these "five percent" banks by the *Bank* and the *Holding Company* through certain of its officers and directors that was demanded by the evidence. This is the violation that the Commissioner must eliminate. There was no holding that stock ownership by individuals was contrary to the banking law, although the Commissioner may so find where supported by evidence. As a matter of fact, no individuals were parties to this case. It may well be that certain individuals will necessarily have to divest themselves of stock holdings in order to eliminate this violation. These are matters which address themselves to the Commissioner.

The decision of this court in the former appearance of the case recognized the primary duty of the Commissioner of Banking and Finance to take action to enforce the provisions of the banking

laws. However, W. M. Jackson, who was Superintendent of Banks at the time the action was brought, had determined that the Citizens & Southern National Bank and the Citizens & Southern Holding Company were not violating the banking laws, and concluded that no action was necessary, and the issue for determination by this court in the former case was whether there was such a violation of the law as would require the Commissioner to bring appropriate action to correct it. This court concluded that the banking laws had been violated, and that mandamus should issue to compel the Commissioner of Banking and Finance to take action against the Citizens & Southern National Bank and the Citizens & Southern Holding Company to enforce the banking laws of this state. This court did not purport to deal with the manner in which the Commissioner should proceed to require compliance with the law.

The trial judge, in making the judgment of this court the judgment of the trial court has undertaken to give specific directions to the Commissioner as to how he shall proceed, and the time within which he shall proceed, to require compliance with the law.

The courts have no authority to interfere with the duties of a public official which are discretionary in nature. Even in those instances where a mandamus is granted under the provisions of Code § 13-1701, as amended by Ga. L. 1949, pp. 309, 310, the courts can only decide the legal issues involved, and can not direct the specific manner in which the Commissioner of Banking and Finance shall perform his duties, except that it must be in accordance with the interpretation of the law given by the court. Compare *Persons v. Mashburn,* 211 Ga. 477 (1) (86 SE2d 319).

The trial judge should have confined his judgment to granting the mandamus prayed by the Independent Bankers Association, and should not have given specific directions as to how the Commissioner shall proceed with his duties in enforcing the law.

The Commissioner must necessarily be allowed a reasonable time in which to formulate the action required to eliminate the violations. In his discretion a reasonable time for enforcement of his directives may also be indicated in order not to seriously disrupt the financial community or the investments of individuals who purchased "five percent" bank stock in good faith. The reasonableness of the time taken by the Commissioner and allowed by him to effect compliance may be determined if and when it becomes an issue. It is sufficient to say that we agree with the trial

court that in no event should this time exceed two years from the date of its judgment of May 24, 1973.

*Judgment reversed on main appeal; affirmed on cross appeal. Grice, P. J., Undercofler and Jordan, JJ., and Judges Andrew J. Whalen, Jr., W. Colbert Hawkins and Jefferson L. Davis, concur. Nichols, Gunter and Ingram, JJ., disqualified.*