S90A1089. COBB COUNTY et al. v. WEBB DEVELOPMENT, INC.
(398 SE2d 3)

SMITH, Presiding Justice.

The appellee, Webb Development, Inc. (Webb) sought a writ of

mandamus to require the Cobb County Board of Commissioners (Board) to provide sewer service to 32 residential lots in a 50-lot subdivision the Board had approved for development. The trial court granted the writ, and we affirm.

After receiving a "sewer availability" letter from Cobb County, Webb purchased almost 30 acres of land zoned for half-acre residential purposes. The letter indicated sewer service was available, but that a certain test would have to be made before the subdivision plans could be approved. The letter also stated that the County was "very reluctant to enter into condemnations for developers. All efforts by the developer must be exhausted before Cobb County would even look into the matter." Prior to the time Webb's subdivision plans were approved, the County had a condemnation policy available to assist developers. Approximately eight months after plan approval, the policy was changed. The condemnation policy now requires developers to attempt to obtain easements prior to plan approval by the Board.

Webb's easement negotiations failed, and Webb had the land analyzed for septic tank systems. The Board's agenda acknowledged that Webb had been negotiating for months to obtain easements and that Webb had "followed the established County guidelines for easement acquisition." However, the Board again adopted a new policy which required a mediation agent to mediate the proper route for the off-site sewer easements. The Board defines an "Easement Mediation Agent" as follows:

> [A] person appointed by the Cobb County Water System to preside over a meeting among the property owner(s), the developer and its surveyor/engineer, and a representative of the Cobb County Water System Engineering Department in determining the most feasible route for any off-site sewer easement the developer may be required to install in a single family residential subdivision development in compliance with Cobb County policies.[1]

Webb met with the mediator and the other requisite parties, and the mediator found the following: Sewer was "available" to the subdivision under the Cobb County Water System guidelines; therefore, Webb was "required to connect to public sewer." However, Webb indicated that its tests showed that septic tanks could be used, and the owners did not object. The mediator also found that Webb had

---

[1] The request for Board assistance in condemnation provides, in pertinent part: "G. The developer shall pay all fees of the Easement Mediation Agent in addition to all easement, judgment, and legal costs related to the Condemnation."

sought assistance in condemnation pursuant to the requirements of the Commissioners and the Water System Engineering Department after negotiations had failed, and Webb had complied with all of the necessary prerequisites to condemnation assistance. Webb and the owner disagreed about the amount that should be paid for the easement; however, they indicated an ability to cooperate in the exact location of the easement. The mediator rejected the argument that Webb began its subdivision knowing that sewer service was not available. In its conclusions and recommendations, the mediator found and recommended the following: Webb had complied with all the prerequisites for assistance in condemnation; the easement would be for a public purpose; Webb should make a certain monetary offer to the property owner and if it was refused, the County should aid Webb in condemning the necessary easements. Webb's offer, higher than the amount recommended, was rejected by the owner. The County Attorney advised the Board to endorse the recommendation of the mediator and advised the Board to either authorize condemnation or the use of septic tank systems.

The Board had before it the mediator's recommendation that it assist Webb in condemning the easement; however, it appeared that septic tank systems would be a good solution, and the property owners did not object. The Board voted to allow the subdivision to go forward with septic tanks. Unfortunately, the next month, the Health Department determined that only 18 of the 50 lots were suitable for septic tanks. The lot upon which the model home had been built was not one of the 18 lots; therefore, no certificate of occupancy could be issued.

Webb again sought assistance from the Board; however, it took no action, and Webb sought a writ of mandamus. The trial court found, among other things: the County had rejected other methods of sewage disposal that did not involve traversing private property; Webb acted in good faith; Webb expended considerable amounts of money while building its subdivision according to the approved plans; Webb complied with all the prerequisites to the exercise of condemnation, even after the Board changed its policy and applied it retroactively to Webb; the sewer lines are lying unused; a certificate of occupancy cannot be issued for the model home rendering it useless as a home; and 32 of the 50 lots cannot be used for residential purposes because of the Board's refusal to condemn an outfall line or authorize any alternative method of sewage disposal. The trial court ordered "that a Writ of Mandamus Absolute issue, requiring Cobb County to service by sewer the remaining thirty-two lots in [Webb's] Subdivision."

1. The appellant enumerates nine errors, all related to granting the writ of mandamus.

(a) The appellant asserts that the trial court used the wrong standard in granting the writ. The trial court found that Webb had a "clear legal right to the relief sought, [and Webb] has also demonstrated a gross abuse of discretion on the part of the Cobb County Commissioners." We find no error. *Dougherty County v. Webb*, 256 Ga. 474, 475 (350 SE2d 457) (1986).

(b) The appellant argues that the trial court erred in finding a gross abuse of discretion, we cannot agree. The Board is the "ultimate arbiter" of the methods of sewage disposal. Webb's subdivision plans were approved at a time when the Board had in place a method of condemnation available for developers, although the Board was "reluctant" to use it until all efforts were exhausted. Eight months after Webb's plans were approved the Board changed its policy to require developers to obtain easements before plan approval. Webb met every articulated standard for obtaining assistance before the policy was changed; after the change, Webb again, and in good faith, met all the articulated standards. The County rejected alternative methods that did not involve traversing other's property. After Webb "exhausted" all efforts at negotiation, Webb attempted to use septic tank systems. The Board approved the development of 50 residential lots and it approved septic tank sewage disposal for all 50 lots. Additionally, the mediator found that because sewer service was "available" under the terms of the County's ordinance that Webb was therefore "require[ed]" to connect to the lines. The ordinance requires Webb to connect, and the County "has a duty and obligation to work with [Webb] to allow [it] the highest and best use of [its] property. . . ." *DeKalb County v. Flynn*, 243 Ga. 679 (256 SE2d 362) (1979). See also *DeKalb County v. Townsend Assoc.*, 243 Ga. 80, 82 (252 SE2d 498) (1979). We find no error in the appellant's second through sixth enumerations of error.

2. The appellant complains that the trial court's writ of mandamus is not sufficiently specific because it does not expressly state what "areas of the adjoining property are to be condemned."

The writ requires the County to service the remaining 32 lots with sewer and specifically states that the Board

> retains the options of acquiring the necessary easements through private negotiations or condemnation of the required outfall line, along with determining the precise location of the line once it leaves the southwest corner of the Homewood/Westwood Subdivision.

The Board is vested with broad discretion in determining both the necessity for taking land and for the selection of land to be taken. *Craven v. Ga. Power Co.*, 248 Ga. 79, 80 (281 SE2d 568) (1981). When

an official act is discretionary, the court may compel the exercise of the discretion, but it cannot direct the manner in which it shall be exercised. *Jackson v. Cochran*, 134 Ga. 396, 397 (67 SE 825) (1910). The trial court did not err in allowing the Board to "retain" the option to negotiate or condemn, nor in allowing the Board to select the route if it condemns. We find no error in the appellant's seventh and eighth enumerations of error.

3. The appellant argues that the trial court erred in ordering it to condemn private land for a private purpose, and that there was no necessity to condemn. The Board may negotiate or condemn; furthermore, condemnation for sewer lines is not condemnation for a private purpose. *Austin Enterprises v. DeKalb County*, 222 Ga. 232, 233 (149 SE2d 461) (1966). The County rejected the other alternatives that did not involve traversing private property. We find no error in the appellant's remaining enumerations of error.

*Judgment affirmed. Smith, P. J., Bell, Hunt, Benham, Fletcher, JJ., and Judge Jonathan C. Peters concur; Weltner, J., dissents. Clarke, C. J., disqualified.*

WELTNER, Justice, dissenting.

The effect of the majority opinion is to require of a county commission the *involuntary* exercise of its power of eminent domain, to the end that the private property of one citizen is wrested from him by condemnation, and its benefits are bestowed upon another private citizen, for the private enrichment of the latter.

1. (a) Our Constitution provides:

Except as otherwise provided in this Paragraph, private property shall not be taken or damaged *for public purposes* without just and adequate compensation first being paid. [Emphasis supplied.] [Constitution of Georgia of 1983, Art. I, Sec. III, Par. I.]

(b) There is no warrant within our Constitution for the taking of private property for *private* purposes.

2. (a) The prior decisions of this court are in accord with that proposition. In *Earth Management v. Heard County*, 248 Ga. 442, 446 (283 SE2d 455) (1981), we held:

We have repeatedly held that *private property may not be taken for a private purpose* and that a condemning authority may not act in bad faith in the exercise of the right of eminent domain. [Emphasis supplied.]

(b) In this connection, see *Dept. of Transp. v. City of Atlanta*, 255 Ga. 124, 131-2 (337 SE2d 327) (1985):

"As the legislature can not in every case supervise the condemnation, it may confer the power upon agencies . . . [t]he power thus conferred is *always* to be strictly construed, and will not be permitted to be exercised except where it is affirmatively granted." (Emphasis supplied.)

This court earlier, in *State Hwy. Dept. v. Hatcher*, 218 Ga. 299, 302 (127 SE2d 803) (1962), noted "the general rule in this country is that statutes conferring the power of eminent domain must be strictly construed, and clear legislative *authority* must be shown to authorize the taking." (Emphasis supplied.)

3. (a) The majority relies upon *Austin Enterprises, Inc. v. DeKalb County*, 222 Ga. 232 (149 SE2d 461) (1966), in which this court upheld the action of a county in condemning private property for sewer purposes. In the case before us, however, the county refused to condemn private property, but was ordered to do so by the superior court.

(b) "The general rule to be followed is that a court will not substitute its judgment for that of a condemning authority in determining the need for a taking or the type of interest to be taken." *Carroll County v. City of Bremen*, 256 Ga. 281, 282 (347 SE2d 598) (1986).

Even so, to the extent that *Austin Enterprises* permits, through the medium of eminent domain, one citizen to acquire the private property of another, it should be overruled, or, at the minimum, limited to its factual and procedural circumstances.

4. To countenance the use of eminent domain as an aid to the private development of real property is to unleash a staggering potential for corruption. In this case, we may have uncorked the fabled bottle, from which will emerge an evil genie that is fearsome beyond belief.

DECIDED NOVEMBER 8, 1990 —
RECONSIDERATION DENIED DECEMBER 4, 1990.

*Ronald A. Lowry*, for appellant.
*Hylton B. Dupree, Jr., Mark A. Johnson*, for appellee.