S00A0641. GILMER COUNTY et al. v. CITY OF EAST ELLIJAY.
(533 SE2d 715)

SEARS, Justice.

Appellants Gilmer County, the Gilmer County Board of Commissioners, and the Director of Gilmer County's Emergency Management Services, William Wright (collectively "the County"), appeal the trial court's grant of mandamus relief requiring the County to provide non-emergency police dispatching services for the appellee City of East Ellijay ("the City"). Under the facts of this appeal, we conclude that there is no clear legal duty incumbent upon the County to gratuitously provide non-emergency dispatching services on behalf of the City's police. We also conclude that the County's decision to stop providing non-emergency dispatching services for the City, which

was based upon the City's refusal to pay its proportional share of the cost of such services, did not constitute an abuse of discretion. It follows that mandamus was not an available remedy in this matter, and therefore we reverse.

The appellee City is located within the appellant County's boundaries. Historically, the County (through its sheriff's office) has provided basic police dispatching services for both 911 emergency and non-emergency situations (collectively "911 dispatching services")[1] to all of Gilmer County, including the appellee City and its police force, without charging a fee for such services. In 1999, the County upgraded its 911 dispatching service system to one that provides dispatchers with computer-generated caller identification data and caller location mapping, thereby enhancing the ability of the County's dispatchers to respond quickly and effectively to service request calls. In addition to acquiring a new computer system and the necessary programming software, the County also acquired a new building in which to headquarter its 911 dispatching services, a high-band radio repeater system that expands the communication abilities of the County's dispatchers, new recorders, and a new telephone system.

In total, these enhancements to the 911 dispatching system cost the County approximately $690,000, and the County estimated that the annual operating costs for its enhanced 911 dispatching system would be approximately $373,000. The County anticipated that approximately $180,000 of this annual operating cost would be paid from the proceeds of the $1.50 operating charge it imposes upon each phone line operating within the County.[2] Nonetheless, the County anticipated that it faced a $193,000 shortfall in the amount necessary to operate the enhanced 911 dispatching system in its first year of existence.

The County reviewed operations data from its outdated 911 dispatching system, and determined that from 1997 to 1999, approximately eight percent of all calls to the system sought dispatching services on behalf of the City's police department. Based upon that information, the County requested that the City pay an annual payment equal to eight percent of the additional $193,000 that was needed to operate the enhanced 911 dispatching system. The City refused, and on August 15, 1999, the County ceased providing non-emergency dispatching services for the City's police department. The County did not cease providing emergency dispatching services for the City's police department, and it presently provides emergency

---

[1] As an example of a non-emergency 911 dispatching service, appellant refers to the situation where a police officer makes a standard request for a license tag check on a vehicle.

[2] See OCGA § 46-5-134 (a).

dispatching services for the City's police.

The City filed suit, and the trial court granted it temporary injunctive relief. A trial was conducted, after which the trial court granted mandamus relief requiring the County to provide non-emergency 911 dispatching services on behalf of the City's police department at no charge to the City. In explaining its rationale behind this ruling, the trial court stated that although the County initially was not obligated by law to provide non-emergency 911 dispatching services to the City's police without charge, once the County undertook to provide those services free of charge, it was obligated by law to continue doing so after enhancing its 911 dispatching system. The trial court further explained that it was not necessary that the County's obligation to provide free non-emergency dispatching services be statutory in nature, but that the obligation could arise solely from the County's previous course of conduct.

1. "Mandamus will issue against a public official only where the petitioner has demonstrated a clear legal right to relief."[3] The duty which a mandamus complainant seeks to have enforced "must be a duty arising by law, either expressly or by necessary implication; and the law must not only authorize the act be done, but must require its performance."[4]

Our research in this matter has uncovered neither a statute, an ordinance, nor any case law that states or implies that once a county undertakes to gratuitously provide a service on behalf of a municipality located within its boundaries, it is legally obligated to continue doing so regardless of any changes that occur in the nature or circumstances of the service being provided. In making the contrary conclusion in its order, the trial court did not cite any legal precedent to indicate the existence of such a clear legal duty. Moreover, on appeal to this Court the appellee City has cited no authority to indicate that such a clear legal duty exists, either.

Put simply, there is no legal precedent to support the trial court's grant of mandamus relief in this matter. No authority suggests that simply because the County has previously provided non-emergency 911 dispatch services on behalf of the City's police force at no charge, it has a clear legal duty to continue providing those same services without charge after enhancing its dispatching service at a substantial cost. Accordingly, we conclude that the trial court erred in basing its grant of mandamus relief upon the existence of the County's clear legal duty to continue gratuitously providing non-

---

[3] *Gwinnett County v. Ehler Enterprises,* 270 Ga. 570 (512 SE2d 239) (1999).

[4] *Lansford v. Cook,* 252 Ga. 414, 415 (314 SE2d 103) (1984). See *Lowe v. State,* 267 Ga. 754, 755 (482 SE2d 344) (1997); *Vargas v. Morris,* 266 Ga. 141 (465 SE2d 275) (1996); *Smith v. Branch,* 215 Ga. 744 (113 SE2d 445) (1960).

emergency 911 dispatching services for the City's police force.

2. The City urges that because the County abused its discretion by terminating its provision of non-emergency 911 dispatching services to the City's police, mandamus relief was properly granted. We disagree.

If a mandamus complainant cannot show a clear legal duty incumbent upon the respondent, the complainant may still be entitled to relief if he can show that the respondent grossly abused his or her discretion in taking or refusing to take official action.[5] However, a public official's exercise of discretion will not be disturbed by a mandamus order unless the official's actions were "arbitrary, capricious and unreasonable."[6] A mandamus complaint cannot succeed merely by urging that the public action it seeks to compel would be "reasonable" — mandamus is not available to remedy anything other than a public official's (or a public body's) discretionary abuse as evidenced by action that was arbitrary, capricious, and unreasonable.[7]

As explained above, the County incurred substantial costs in upgrading its 911 dispatching system, and faced a $193,000 deficit in the anticipated cost of operating the enhanced system in its first year of existence. In an effort to meet that deficit, the County sought to allocate the operating costs among the municipalities located within the County — including the appellee City of East Ellijay — and the County's unincorporated portions. The County based its allocation of operating costs upon historical data that showed each entities' proportional usage of the outdated 911 system during the two preceding years. The County determined that within that time frame, the City had on average accounted for eight percent of the usage of the outdated 911 dispatching service. Based upon that information, the County requested that the City pay a proportional eight percent of the operating costs of the enhanced 911 dispatching system. While the City did not challenge the evidence regarding its historical percentage of usage, it nonetheless refused to pay eight percent of the operating costs. Thereafter, the County stopped providing free non-emergency 911 dispatching services for the City's police department, although it does still provide free emergency 911 dispatching services for the City's police.

The County's termination of free non-emergency dispatching services was neither arbitrary nor capricious. Rather, it was based upon

[5] *Dougherty County v. Webb*, 256 Ga. 474, 477 (350 SE2d 457) (1986).

[6] *City of Atlanta v. Wansley Moving & Storage Co.*, 245 Ga. 794, 797 (267 SE2d 234) (1980).

[7] Id. See *Pruitt v. Meeks*, 226 Ga. 661, 663 (177 SE2d 41) (1970). Obviously, if official action was in contravention of a definite legal duty, see Division 1 supra, the action was arbitrary, capricious and unreasonable.

a necessity; the County faced a deficit in the funds necessary to operate its enhanced 911 dispatching system, and the County needed to surmount that deficit if its enhanced system was to function. The County's decision to terminate non-emergency dispatching services also was principled, in that the termination occurred only after the County made a good-faith effort to resolve the dispute by proposing a fair and rational fee arrangement, which was rejected by the City. Finally, the County's decision to terminate non-emergency dispatching services was eminently reasonable, as it was made in response to the City's refusal to pay its pro rata share of the operational expenses for the dispatching system.

Accordingly, we reject the City's argument that the County's actions constituted a gross abuse of discretion, making mandamus relief appropriate in this matter.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 11, 2000 —
RECONSIDERATION DENIED SEPTEMBER 29, 2000.

*Meadows, Ichter & Trigg, Michael J. Bowers, T. Joshua R. Archer*, for appellants.

*George W. Weaver, Jeffrey L. Floyd*, for appellee.

*Walter E. Sumner, James F. Grubiak, Kelly J. Pridgen*, amici curiae.