294 Ga. 730
FINAL COPY

S13A1395.  BIBB COUNTY v. MONROE COUNTY et al.
S13A1396.  KEMP v. MONROE COUNTY.

HUNSTEIN, Justice.

These appeals involve a long-running boundary line dispute between Monroe County and Bibb County, which has culminated in a superior court order directing Secretary of State Brian Kemp to accept a line identified by a State-appointed land surveyor as the true boundary line separating the two counties.  This Court granted the applications for discretionary appeal filed separately by Bibb County and Secretary Kemp to address the propriety of the relief granted below.  We now hold that, while mandamus may lie to require the Secretary of State to comply with his statutory obligations with regard to county boundary line disputes, see OCGA § 36-3-20 et seq., the superior court lacked the authority to require Secretary Kemp to accept a particular line as the true boundary line.  Specifically, while mandamus is authorized to compel the Secretary to consider the relevant law and evidence, to determine the true boundary line between the counties, and to record the survey and plat reflecting that boundary line, mandamus is not authorized to dictate where the boundary

line is to be located. Accordingly, we reverse and remand for further proceedings.

In 2005, Governor Sonny Perdue appointed land surveyor Terry Scarborough to identify the boundary between the counties, pursuant to a statutory process for settling boundary disputes first established in the 1880s. See OCGA § 36-3-20 et seq.; Ga. L. 1887, pp. 106-107. In April 2008, after receiving formal authorization to proceed from the Secretary of State ("the Secretary"), Scarborough conducted his survey work and submitted his final survey and plat to the Secretary on March 27, 2009, delineating what he concluded was the true boundary line separating Monroe County and Bibb County. Bibb County filed exceptions to the final survey with the Secretary, disputing Scarborough's conclusion as to the location of the northernmost terminating point of the boundary line. Monroe County responded, defending the survey, whereupon the Secretary referred the matter to the Office of State Administrative Hearings for appointment of a Special Assistant Administrative Law Judge ("SAALJ") to hear evidence and make a recommendation. After a three-day evidentiary hearing in February and March 2011, the SAALJ recommended accepting the survey. The Secretary then held oral argument and

conducted a site visit to the area along the Ocmulgee River encompassing both the terminating point identified in the Scarborough survey and the alternative terminating point argued for by Bibb County. On August 23, 2011, the Secretary issued a final determination, rejecting the Scarborough survey, thus leaving the boundary line undetermined.

After the Secretary denied Monroe County's motion for reconsideration, Monroe County sought judicial review in superior court. The trial court dismissed that action, based on its conclusion that the Secretary, in issuing his final determination, was not acting in a judicial capacity and thus his determination was in the nature of a political decision not subject to direct judicial review. Monroe County then filed a petition for mandamus, asserting that the Secretary had exceeded his authority in refusing to accept the Scarborough survey and failing to establish a definitive boundary line. Following a hearing, the superior court issued its final order, granting the mandamus petition and directing the Secretary to record the Scarborough survey and plat, thereby establishing the boundary between Monroe County and Bibb County as that identified by Scarborough. On the same date, the superior court also denied an emergency motion to intervene filed by Bibb County.

3

The Secretary then filed an application for discretionary appeal with the Court of Appeals, which transferred the case to this Court. In the meantime, Bibb County filed an application for discretionary appeal in this Court, as to both the order granting the writ of mandamus and the order denying its motion to intervene. This Court granted both applications and consolidated the appeals, requesting the parties to address four distinct questions: (1) whether the actions of an official under OCGA § 36-3-20 et seq. may be the subject of a writ of mandamus; (2) whether, assuming mandamus were available, the superior court erred in granting the mandamus petition and ordering the Secretary to record the Scarborough survey; (3) whether the order granting mandamus was directly appealable; and (4) whether the superior court erred in denying Bibb County's emergency motion to intervene. We address these questions seriatim.

1. Pursuant to OCGA § 36-3-20,

[w]hen the boundary line between two or more counties is in dispute and the grand jury of either county presents that the boundary line needs to be marked out and defined, it shall be the duty of the clerk of the superior court in the county where the presentments were made to certify the presentments to the Governor. The Governor shall appoint some suitable and competent land surveyor, who shall not reside in either county, to survey, mark out, and define the boundary line in dispute and to return the survey with plat to the Secretary of State's office to be recorded in a book

4

to be kept for that purpose.

Once the survey and plat have been filed with the Secretary, the Secretary must allow 30 days within which the authorities of either county may file "a protest or exceptions thereto." OCGA § 36-3-23. Where such protest or exceptions are filed, the Secretary must, after giving written notice to the parties, hold a hearing. OCGA § 36-3-24. "Upon the hearing, the Secretary of State shall determine from the law and evidence the true boundary line in dispute between the respective counties." Id.

> Upon the making of a decision by the Secretary of State pursuant to Code Section 36-3-24 or in case no protest or exceptions are filed within the 30 days, the Secretary of State shall cause the survey and plat to be recorded in a book to be kept for that purpose, whereupon the same shall be final and conclusive as to the boundary line in dispute .. . .

OCGA § 36-3-25.

As the statutory language makes clear, the Secretary's overall duty under this scheme is to ascertain the "true boundary line" between the counties. Where the appointed surveyor files his survey and plat and no protests or exceptions are filed within 30 days, the statute requires the Secretary to record the same, which then stands as the final, conclusive determination of the boundary line. Where

5

a protest is filed, however, the Secretary is obligated to "determine" what constitutes "the true boundary line" after considering "the law and evidence." OCGA § 36-3-24.

Because of the political nature of the decision-making surrounding county boundary lines, Bibb County and the Secretary contend that any dispute regarding the boundary setting process presents a purely political question that is non-justiciable. See Thompson v. Talmadge, 201 Ga. 867, 871 (1) (41 SE2d 883) (1947) ("the judiciary under the Constitution is wholly without jurisdiction to adjudicate a purely political question"). In support of this argument, Bibb County and the Secretary cite our opinion in Early County v. Baker County, 137 Ga. 126 (72 SE 905) (1911), in which we characterized the Secretary's duties under the boundary dispute statute as being "political" rather than "judicial" in nature. Id. at 126-127; see also Fine v. Dade County, 198 Ga. 655, 665 (32 SE2d 246) (1944) (in determining disputed county boundary line, Secretary "does not . . . act judicially but acts only politically").[1]

Construed in its proper context, the holding of Early County does not

---

[1] Indeed, the characterization of the boundary setting process as being political rather than judicial in nature was the underpinning for the trial court's dismissal of Monroe County's initial petition for judicial review.

support the conclusion that disputes over the boundary setting process are categorically non-justiciable. The issue presented in Early County was whether the boundary dispute statute constituted a delegation of judicial powers in violation of the constitutional separation of powers doctrine. In determining that the statute was not an unconstitutional delegation of judicial power, this Court in no way implied that disputes with regard to the statute's application were non-justiciable "political questions." Rather, we simply determined that establishing county boundaries was a "political function of government" entrusted to the legislative branch, which was authorized to "provide various means to find the location of a boundary," including that set forth in the boundary dispute statute. Id. at 126-127. "'The fact that a controversy has political overtones does not place it beyond judicial review." Owens v. City of Greenville, 290 Ga. 557, 558 (1) (722 SE2d 755) (2012). See Thompson v. Talmadge, 201 Ga. at 871-875 (courts had jurisdiction to decide legitimacy of procedure employed by General Assembly to select successor to Governor-elect, who had died before taking office). Thus, we conclude that alleged violations of the boundary dispute statute by the Secretary are not non-justiciable "political questions."

7

Accordingly, we answer the first question in the affirmative: the actions of officials under OCGA § 36-3-20 et seq. may properly be the subject of a petition for mandamus, so long as the petition otherwise satisfies the requirements of our mandamus statute.

2. Our mandamus statute provides:

> All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights[.]

OCGA § 9-6-20. "Mandamus is a remedy for improper government inaction – the failure of a public official to perform a clear legal duty." Southern LNG, Inc. v. MacGinnitie, 294 Ga. 657, 661 (3) (a) (___SE2d ___) (2014). The writ of mandamus is properly issued only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief. Richard C. Ruskell, Davis & Shulman's Ga. Practice & Procedure, § 29:2 (2013-2014 ed.); see also McClung v. Richardson, 232 Ga. 530 (207 SE2d 472) (1974).

(a) No other adequate legal remedy. Mandamus will not lie where the petitioner has another avenue for pursuing the relief sought that is "'equally

8

convenient, complete and beneficial.'" North Fulton Med. Center, Inc. v. Roach, 265 Ga. 125, 127-128 (453 SE2d 463) (1995). Thus, for example, where an official or agency's action is subject to review by certiorari, the writ of mandamus is unavailable. See McClung v. Richardson, 232 Ga. at 533-534 (reversing grant of mandamus where decision of city personnel review board was reviewable by certiorari); South View Cemetery Assn. v. Hailey, 199 Ga. 478 (34 SE2d 863) (1945) (reversing dismissal of mandamus action that had been premised on the conclusion that certiorari was an available remedy).

Here, Monroe County initially sought review of the Secretary's action via a complaint for judicial review, which the trial court dismissed on the ground that the Secretary's action was not "judicial" in nature. None of the parties appealed the dismissal, and this avenue of relief is thus foreclosed.[2] The Secretary contends, however, that another option is available: obtaining another

_____

[2] We offer no opinion regarding whether dismissal of the petition for judicial review was proper. Because no party here has argued that such a petition would be an adequate remedy, and because this possible remedy was made unavailable by the trial court's dismissal, we conclude that such a petition was not an available adequate legal remedy in this case.

9

grand jury presentment and restarting the entire process from the beginning.[3]

As we recently concluded in another mandamus action, starting the process over

from square one "can hardly be described as 'equally convenient, complete, and

beneficial' to the present action for mandamus" for attaining the relief Monroe

County seeks. See Southern LNG, Inc., 294 Ga. at 664. Nearly ten years have

elapsed since the Monroe County grand jury certified the initial presentment to

the Governor, and substantial sums of taxpayer money have already been spent

in this process. We therefore conclude that mandamus is the only practicable

mechanism through which Monroe County could attain the relief it is seeking.

(b) Clear legal right. A clear legal right to the relief sought may be found

only where the claimant seeks to compel the performance of a public duty that

an official or agency is required by law to perform. See Bland Farms, LLC v.

Ga. Dept. of Agriculture, 281 Ga. 192, 193 (637 SE2d 37) (2006) (for

mandamus to issue, "'the law must not only authorize the act to be done, but

must require its performance'"); Gilmer County v. City of East Ellijay, 272 Ga.

774 (1) (533 SE2d 715) (2000); Aspinwall v. Harris, 217 Ga. 485, 486-487 (123

_____

[3]In fact, Monroe County has actually done just that. However, the Governor has taken no action on this new grand jury presentment, no doubt due to the pendency of this appeal.

SE2d 652) (1962). Where performance is required by law, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion. Ga. Dept. of Transp. v. Peach Hill Properties, Inc., 278 Ga. 198 (2) (599 SE2d 167) (2004); Persons v. Mashburn, 211 Ga. 477 (86 SE2d 319) (1955).

The determination of whether official action is required depends on the law governing the subject matter in question. Thus, where the applicable law vests the official or agency with discretion with regard to whether action is required in a particular circumstance, mandamus will not lie, because there is no clear legal right to the performance of such an act. See, e.g., City of College Park v. Wyatt, 282 Ga. 479 (4) (651 SE2d 686) (2007) (where law creating municipal development authority gave authority broad discretion to enact regulations governing its functions, there was no clear legal right to the enactment of a regulation prescribing process for removal of the authority's members). On the other hand, where applicable law requires official action, mandamus may lie to compel the taking of action in some form. See, e.g., Ga. Dept. of Transp. v. Peach Hill Properties, Inc., 278 Ga. at 200-201 (mandamus

11

was appropriate where agency had adopted policy effectively barring any exemptions despite applicable law requiring agency to consider exemption requests).

Even where official action of some sort is required, however, where the action involves the exercise of discretion, mandamus will not lie to dictate the manner in which the action is taken or the outcome of such action.

> Where the act required [by law] to be done involves the exercise of some degree of official discretion and judgment upon the part of the officer charged with its performance, the writ [of mandamus] may properly command him to act, or, as is otherwise expressed, may set him in motion; it will not further control or interfere with his action, nor will it direct him to act in any specific manner.

(Citation and punctuation omitted.) Ga. Dept. of Transp. v. Peach Hill Properties, Inc., 278 Ga. at 201. See also Bland Farms, LLC v. Ga. Dept. of Agriculture, 281 Ga. at 193 ("[m]andamus can be used to compel an official to exercise his or her discretion, but not to direct the manner in which that discretion is exercised"); State Bd. of Examiners in Optometry v. Society of Professional Optometrists, Inc., 231 Ga. 44, 46 (200 SE2d 123) (1973) ("[t]he courts will not direct a public official by mandamus as to what manner he will exercise the discretion vested in him, but they may compel the officer to

12

exercise his discretion"). Thus, mandamus is proper to compel the undertaking of some official action to which the petitioner has a clear legal right, but it is not proper either to prescribe how that action is taken or to preordain its result. See, e.g., Ga. Dept. of Transp. v. Peach Hill Properties, Inc., 278 Ga. at 201 (mandamus was proper to require agency to develop reasonable guidelines for seeking exemptions from aviation regulations, but it was not proper to dictate the agency's decision on any particular exemption request); Dougherty County v. Webb, 256 Ga. 474 (1) (350 SE2d 457) (1986) (mandamus was proper to compel the county commission to consider all evidence offered in connection with the plaintiff's zoning application but not to dictate the commission's ultimate decision thereon); Citizens & Southern Nat. Bank v. Independent Bankers Assn., 231 Ga. 421, 425 (202 SE2d 78) (1973) (mandamus was proper to require banking official to take action to enforce banking laws but not to direct the specific manner in which the official was to perform those duties); Thomas v. Ragsdale, 188 Ga. 238 (3) (3 SE2d 567) (1939) (mandamus was proper to compel board of county commissioners to regulate the sale of liquor in some form but not to prescribe the content of such regulations).

To apply the above principles of law to this case, we must parse out the

13

precise nature of the Secretary of State's statutory duties given the current procedural posture of the Monroe County/Bibb County boundary line dispute. Under OCGA § 36-3-25, where no protest is filed in response to the appointed surveyor's proposed boundary line, the Secretary is required to record the surveyor's survey and plat; the Secretary's duty in this circumstance is mandatory. Where, however, as here, a protest is filed, the Secretary is obligated to "determine" what constitutes "the true boundary line" after considering "the law and evidence." OCGA § 36-3-24. In this instance, the Secretary has a mandatory duty to consider the relevant law and evidence and to render <u>some</u> decision identifying the boundary line.[4] Flowing naturally from these various mandatory duties delegated to the Secretary, we conclude, are three clear legal rights afforded to counties involved in a boundary dispute: (1) the right to file a protest to challenge the appointed surveyor's survey and plat; (2) the right to have the Secretary determine the true boundary line in accordance with the law and evidence; and (3) the right to have the Secretary record the survey and plat establishing that boundary line.

---

[4] See, e.g., <u>Ga. Dept. of Transp. v. Peach Hill Properties, Inc.</u>, 278 Ga. at 201; <u>Dougherty County v. Webb</u>, 256 Ga. at 477; <u>State Bd. of Examiners in Optometry v. Society of Professional Optometrists, Inc.</u>, 231 Ga. at 46.

14

In relation to the third of these rights, the statute directs the Secretary to record "the survey and plat," OCGA § 36-3-25, a direction that might be construed to refer exclusively to the appointed surveyor's survey and plat, such that the Secretary would not be authorized to record any alternative survey and plat. Under this construction, the Secretary would be permitted only either to accept the survey and plat of the appointed surveyor or to reject it. Although this construction may not be entirely implausible, it is not the best reading of the statutory text. After all, when we consider the meaning of a statute, "we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way . . . ." Deal v. Coleman, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). Looking to the statute as a whole, it is clear that it contemplates a process that will result in a definitive determination as to the "true boundary line." It is equally clear that the Secretary is required to "determine from the law and evidence the true boundary line" and to render some final decision that reflects his determination.

Thus, viewed in context, the reference in OCGA § 36-3-25 to the recording of "the survey and plat" is most reasonably and naturally understood

15

to refer to the recording of a survey and plat that identifies the "true boundary line." Notably, this understanding is consistent with the manner in which the Secretary has applied the statutory scheme in past county boundary line disputes, in which the Secretary has rendered decisions establishing an actual boundary line different than the appointed surveyor's, rather than simply accepting or rejecting the appointed surveyor's survey and plat. See, e.g., In re Jasper County and Butts County Disputed Boundary Line (Secretary of State, March 29, 1915) (setting aside survey and report of appointed surveyor and fixing the "true boundary line" as "that line which is set out in the Act creating the County of Randolph, now Jasper County"); In re Baker County and Early County Disputed Boundary Line (Secretary of State, June 9, 1910) (written decision identifying western line on survey and plat prepared by surveyor as "true boundary line," notwithstanding that surveyor had identified eastern line as "true boundary line"). Indeed, the Secretary acknowledged as much in his final decision in this case, in which he noted, "Georgia law does not confine the Secretary's decision only to accepting or rejecting the filed survey and plat."

While the counties therefore do have a clear legal right to a process that results in a definitive determination of the boundary line separating them, they

16

do not have a clear legal right to any particular result of the Secretary's review process.  See Ga. Dept. of Transp. v. Peach Hill Properties, Inc., 278 Ga. at 201; Persons v. Mashburn, 211 Ga. at 480-481.  In addition, because the statute prescribes no particular process by which the Secretary is to receive evidence and reach a decision, these matters fall within the Secretary's discretion.  See Thomas v. Ragsdale, 188 Ga. at 243.  The Secretary has already exercised his discretion in this regard by referring the matter to the SAALJ, before whom substantial evidence, including tax maps and historical documents, has been developed, and by undertaking additional investigation, personally visiting the alternative terminating points argued for by each of the counties.[5]

Accordingly, in answer to the second question posed, we conclude that, while mandamus could properly issue to compel the Secretary to determine the

---

[5] We note that there has been considerable dispute regarding the fact that Scarborough himself has never actually appeared in these proceedings, owing to his initial refusal to appear due to Bibb County's apparent failure to pay its portion of his fees, see OCGA § 36-3-26, and the Secretary's denial of Scarborough's subsequent efforts to present evidence after the Secretary announced he had closed the record in the case.  Whether there has been any gross abuse of discretion in the Secretary's conduct of the proceedings is a question the trial court may elect to  address on remand.  See Ga. Dept. of Transp. v. Peach Hill Properties, Inc., 278 Ga. at 201 (mandamus will lie when a public officer grossly abuses his discretion in the course of taking required official action); see also Gilmer County v. City of East Ellijay, 272 Ga. at 777.

17

boundary line and record the survey and plat reflecting such line, the trial court erred in dictating the result of the review process by directing the Secretary to record the Scarborough survey.[6]

3. Given that these cases are before the Court as granted applications for discretionary appeal, there is no question as to this Court's jurisdiction. Whether the cases should have been filed as direct appeals under OCGA § 5-6-34 (a) (1) and (7) (direct appeals of final judgments and mandamus cases) or as applications under OCGA § 5-6-35 (a) (1) (discretionary appeals of administrative agency decisions) is of no consequence, as the Court had the authority to grant the applications even if the cases were properly the subject of direct appeals. See OCGA § 5-6-35 (j) ("the appellate court shall have jurisdiction to decide the case" where an application is filed to appeal a matter falling within the purview of the direct appeal statute). Accordingly, we decline to further address the issue posed in the third question above.

---

[6]We note also that, once the Secretary resumes the statutory process for resolving the boundary dispute, either county would be entitled to seek mandamus again if the Secretary were then to act arbitrarily and capriciously in determining the true boundary line. See Ga. Dept. of Transp. v. Peach Hill Properties, Inc., 278 Ga. at 201 (2); Cobb County v. Webb Dev., Corp., 260 Ga. 605 (1) (398 SE2d 3) (1990).

4. As already noted, Monroe County's mandamus petition was filed after the trial court had dismissed its petition for judicial review. Though the petition for judicial review named the Secretary as the sole Respondent, Bibb County was served with notice of the petition, whereupon it moved to intervene. The trial court granted the motion, finding "that [Bibb County] has an interest in this action, that disposition of this action may impair or impede its ability to protect that interest, and that said interest is not adequately represented by existing parties." Subsequently, the trial court dismissed the petition for judicial review.

As in its petition for judicial review, Monroe County's mandamus petition named the Secretary as the sole Respondent. However, unlike with its earlier petition, Monroe County apparently did not serve notice of its mandamus petition on Bibb County and, according to an affidavit submitted by Bibb County's attorney, no representative of Bibb County was notified of the petition until after a hearing had been held and an oral ruling issued granting the petition. The following day, Bibb County filed an emergency motion to intervene in the mandamus action. Less than two weeks later, the trial court entered its written order granting the mandamus petition and in a separate order issued on the same day denied Bibb County's motion to intervene.

19

OCGA § 9-11-24 (a) provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . [w]hen the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Here, it is undisputed that the petition for mandamus raised the same issues as had been raised in the earlier petition. In fact, in recognition of the overlap between the two cases, the mandamus petition was assigned to the same trial judge to which the petition for judicial review had been assigned. In connection with the earlier petition, the trial court expressly held that Bibb County claimed an interest in the boundary line dispute that was the subject of the petition for judicial review, that disposition of that action could impair its ability to protect its interest, and that its interest was not adequately represented by existing parties. These findings are equally true with regard to Bibb County's interest in the mandamus action, and thus the motion to intervene in the mandamus action was substantively meritorious.

While the order denying the motion to intervene does not set forth any specific reason for denial, it is possible the trial court could have found the

20

motion untimely, given that it was filed after the hearing at which the court announced its ruling. The timeliness of a motion to intervene is a determination generally entrusted to the trial court's sound discretion. Kroger v. Taylor, 320 Ga. App. 298 (739 SE2d 767) (2013). Under the circumstances presented here, however, we believe the trial court abused its discretion.

> "[W]here intervention appears before final judgment, where the rights of the intervening parties have not been protected, and where the denial of intervention would dispose of the intervening parties' cause of action, intervention should be allowed and the failure to do so amounts to an abuse of discretion."

Id. at 298. Given Bibb County's lack of notice of the mandamus action, its prompt action seeking intervention upon discovery of the action, the important rights at stake, and the fact that neither of the named parties could adequately protect Bibb County's rights, we conclude that the trial court erred in denying Bibb County's motion to intervene.

In light of the foregoing, we reverse the grant of mandamus and the denial of Bibb County's motion to intervene, and we remand the case to the trial court for further proceedings consistent with this opinion.

Judgment reversed and case remanded. Thompson, C. J., Hines, P. J., Benham, Melton, Blackwell, JJ., and Judge David B. Irwin concur. Nahmias,

J., disqualified.

Decided March 10, 2014.

Mandamus. Fulton Superior Court. Before Judge Lee.

Adams & Jordan, Virgil L. Adams, Donald J. Jordan, Dawn M. Lewis, Charles M. Cork III, for appellant (case no. S13A1395).

Samuel S. Olens, Attorney General, William W. Banks, Jr., Denise E. Whiting-Pack, Senior Assistant Attorneys General, Mary J. Leddy Volkert, Shannon A. McGee, Assistant Attorneys General, Nels S. D. Peterson, Solicitor-General, for appellant (case no. S13A1396).

King & Spalding, Carolyn C. Burch, Jessica E. Sabbath, Letitia A. McDonald, Dillon & Vaughn, Michael A. Dillon, Benjamin A. Vaughn, for appellees.