**FOURTH DIVISION**
**DOYLE, P. J.,**
**RAY and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 15, 2018**

# In the Court of Appeals of Georgia

A18A1036. SCARBOROUGH v. KEMP.                    DO-037

DOYLE, Presiding Judge.

Terry Scarborough, a land surveyor, was appointed by Governor Sonny Perdue to help resolve a long-running boundary line dispute between Bibb County and Monroe County, which dispute remains pending before Secretary of State Brian Kemp.[1] In this appeal, Scarborough, appearing pro se, challenges an order entered by the Superior Court of Fayette County granting the Secretary's emergency petition for declaratory judgment enforcing an administrative subpoena issued by the Secretary to secure Scarborough's participation in the final hearing in the boundary-dispute proceeding. Scarborough contends that the superior court erred because the Secretary

---

[1] See OCGA § 36-3-24 (providing for a hearing before the Secretary of State to "determine from the law and evidence the true boundary line in dispute between the respective counties").

lacks subpoena power, and Scarborough does not wish to be "plac[ed] . . . on trial."[2]

Because Georgia statutory and case law give the Secretary "broad and undirected discretion" to establish a procedure to resolve boundary disputes between counties,[3] we affirm.

The underlying boundary dispute dates back to 2005 and has been twice addressed by the Supreme Court of Georgia.[4] As summarized in those cases, the factual background is undisputed:

> In 2005, Governor Sonny Perdue appointed land surveyor Terry
> Scarborough to identify the boundary between the counties, pursuant to
> a statutory process for settling boundary disputes first established in the

---

[2] The argument in Scarborough's appellate brief is wide-ranging and difficult to parse as it relates to the order from which he appealed. We have endeavored to address the merits of his argument properly made as to the order at issue. See generally *Howard v. State*, 340 Ga. App. 133, 139 (3) (a) (796 SE2d 757) (2017) ("[U]nder the rules of this Court, an appellant must support enumerations of error with argument and citation of authority."); *Bryant v. BMC of Ga.*, 188 Ga. App. 124, 125 (372 SE2d 280) (1988) ("This [C]ourt has no jurisdiction to consider grounds which . . . are not enumerated as error according to OCGA § 5-6-40.") (punctuation omitted).

[3] *Kemp v. Monroe County*, 298 Ga. 67, 71 (2) (779 SE2d 330) (2015) ("*Kemp II*").

[4] See id. at 67; *Bibb County v. Monroe County*, 294 Ga. 730 (755 SE2d 760) (2014) ("*Kemp I*").

1880s.[5] In April 2008, after receiving formal authorization to proceed from the Secretary of State . . . , Scarborough conducted his survey work and submitted his final survey and plat to the Secretary on March 27, 2009, delineating what he concluded was the true boundary line separating Monroe County and Bibb County. Bibb County filed exceptions to the final survey with the Secretary, disputing Scarborough's conclusion as to the location of the northernmost terminating point of the boundary line. Monroe County responded, defending the survey, whereupon the Secretary referred the matter to the Office of State Administrative Hearings [("OSAH")] for appointment of a Special Assistant Administrative Law Judge ("SAALJ") to hear evidence and make a recommendation. After a three-day evidentiary hearing in February and March 2011, the SAALJ recommended accepting the survey. The Secretary then held oral argument and conducted a site visit to the area along the Ocmulgee River encompassing both the terminating point identified in the Scarborough survey and the alternative terminating point argued for by Bibb County. On August 23, 2011, the Secretary issued a final determination, rejecting the Scarborough survey, thus leaving the boundary line undetermined. Scarborough subsequently offered addendum evidence in an effort to explain his conclusions but the Secretary refused to consider this evidence. Monroe County then filed a petition for mandamus, asserting that the Secretary had exceeded his authority in refusing to accept the Scarborough survey and failing to establish a definitive boundary line. Following a hearing, the superior court issued its final order, granting

_____

[5] See OCGA § 36-3-20 et seq.

the mandamus petition and directing the Secretary to record the Scarborough survey and plat, thereby establishing the boundary between Monroe County and Bibb County as that identified by Scarborough.[6]

This ruling was appealed by the Secretary and Bibb County, and the Supreme Court reversed, explaining that the Superior Court was "not authorized to direct the Secretary to accept and record a particular boundary line."[7]

On remand, the Secretary informed the parties and the superior court of his intent to hold a hearing allowing additional evidence from Scarborough and a response from the parties. After a dispute, the trial court entered an order

> prohibiting the Secretary from holding an additional hearing and considering new evidence and also finding that the Secretary's prior decision not to consider the addendum evidence was a gross abuse of discretion. These conclusions were followed by the trial court's direction that the Secretary "not . . . allow the Counties to submit additional evidence or hold an evidentiary hearing before deciding the true boundary line between Bibb County and Monroe County."[8]

---

[6] (Punctuation and citation omitted.) *Kemp II*, 298 Ga. at 68-69.

[7] Id. at 69.

[8] Id.

4

A second appeal followed, and the Supreme Court again reversed. In so doing, it emphasized that

> while OCGA § 36-3-20 et seq. provides counties a clear legal right to a process that results in a definitive determination of a disputed boundary line, . . . the statutory process does not grant counties the right to a "particular process by which the Secretary is to receive evidence and reach a decision, as these matters fall within the Secretary's discretion."[9]

Therefore, the Court ruled that the Secretary was authorized to hold an additional hearing and consider new evidence before reaching a final decision.[10]

On remand and leading up to this case, the Secretary held a status conference and, at Scarborough's request, scheduled a special hearing to hear additional evidence from Scarborough supporting his survey. Scarborough was permitted to do so without examination by counsel from either county, so the Secretary nevertheless informed him that he would be required to appear at the final evidentiary hearing to serve as a witness. Thereafter, the Secretary notified the parties as well as Scarborough that a final hearing would be held in December 2016 under the rules of procedure of OSAH.

---

[9] (Punctuation omitted.) Id. at 70 (1), quoting *Kemp I*, 294 Ga. at 738 (2).

[10] Id. at 72 (2).

5

Pursuant to those rules,[11] Bibb County served a subpoena to secure Scarborough's presence as a witness at the hearing; Scarborough moved to quash the subpoena, and the Secretary denied the motion and issued his own subpoena ordering Scarborough to appear as a witness at the hearing.

Due to Scarborough's continued resistance to comply with subpoenas to appear at the final hearing, the Secretary filed an "Emergency Petition for Declaratory Judgment on Enforcement of an Administrative Subpoena." Following a hearing, the superior court granted the petition, and Scarborough now appeals.

Scarborough challenges the Secretary's subpoena power and essentially argues that he should not be compelled to appear at the final hearing to testify and defend the survey he has already submitted. We review the issues presented de novo because it involves a question of law.[12]

As noted above, the General Assembly has provided a statutory scheme for resolving county boundary-line disputes. First, "[w]hen the boundary line between

---

[11] See Ga. Comp. R. & Regs. r. 616-1-2-.19 (providing for the issuance of subpoenas in administrative proceedings).

[12] See *Barrow v. Dunn*, 344 Ga. App. 747, 749 (812 SE2d 63) (2018) ("[T]he interpretation of a statute or regulation is a question of law and, thus, is . . . reviewed de novo on appeal.").

two or more counties is in dispute and the grand jury of either county presents that the boundary line needs to be marked out and defined," the presentment is made to the Governor.[13] Then, "[t]he Governor shall appoint some suitable and competent land surveyor, who shall not reside in either county, to survey, . . . and define the boundary line in dispute and to return the survey with plat to the Secretary of State's office to be recorded in a book to be kept for that purpose."[14] If a county disputes the surveyor's result, the county can file a timely protest to the Secretary.[15] After providing notice to the counties, the Secretary, upon holding a hearing, "shall determine from the law and evidence the true boundary line in dispute between the respective counties."[16]

The procedural scheme for these disputes was explained in *Kemp II*:

In enacting the provisions related to county boundary-line disputes, the legislature did not contemplate a lawsuit between the counties, thereby imposing upon such proceedings the rules and requirements applicable in judicial proceedings. Instead, the legislature devised a means by

_____

[13] OCGA § 36-3-20.

[14] Id.

[15] See OCGA § 36-3-23.

[16] OCGA § 36-3-24.

7

which the State can delineate, ascertain, and make certain the boundaries between counties which are its political subdivisions. . . . The language of the statutes creating the scheme for determining county boundary lines, however, *prescribes no particular process but confers upon the Secretary the broad and undirected discretion* to "determine from the law and evidence the true boundary line in dispute between the respective counties."[17] Thus, while the Secretary, in his discretion, may incorporate some or all of the rules and processes found in judicial proceedings when making a determination under OCGA § 36-3-24 as to the true boundary line, . . . the Secretary is not constrained to do so. *The Secretary, in fact, is not bound to any one process or even to follow the same process each time he is called upon to determine a true boundary line.* Instead, the statutes grant the Secretary the freedom to determine in his discretion the particular process to be followed in each case.[18]

In light of this broad statutory authority, the Secretary's conduct of this case falls well within his discretion to establish a procedure to resolve county boundary-line disputes, including adopting the OSAH rules and invoking subpoena power under those rules. Scarborough, as the appointed surveyor, is in a unique position to edify the Secretary and the counties as to the result of his survey, and requiring him

---

[17] OCGA § 36-3-24.

[18] (Citations and punctuation omitted; emphasis supplied.) *Kemp II*, 298 Ga. at 71 (2).

to appear as a witness at the final hearing is not beyond the Secretary's authority under OCGA § 36-3-24. Accordingly, the superior court did not err by entering a declaratory judgment ordering Scarborough to comply with any subpoena issued under that authority.

*Judgment affirmed. Ray and Mercier, JJ., concur.*