## A00A0289. GEORGIA RECEIVABLES, INC. v. WELCH.
### (529 SE2d 164)

ELDRIDGE, Judge.

In this contract case, appellant Georgia Receivables, Inc. sought to recover from appellee Cheryl Welch amounts it claims were due under a retail installment contract entered into between Welch and Holiday Universal, Inc. a/k/a Bally's ("Bally's") for a health spa facility membership. Georgia Receivables alleged that it subsequently purchased the membership contract from Bally's and was assigned all of the rights, title, and interest to the contract. Welch denied the debt in her pro se answer. On Georgia Receivables' motion for summary judgment, the trial court found that the contract Georgia Receivables sought to enforce was void and unenforceable, because the contract did not meet the requirements of OCGA § 10-1-393.2. The trial court denied summary judgment to Georgia Receivables and dismissed its complaint. Georgia Receivables appeals, alleging that the trial court erred in denying its motion for summary judgment. Finding no error, we affirm.

The Fair Business Practices Act of 1975 was passed by the General Assembly "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." OCGA § 10-1-391 (a). Such Act "is to be liberally construed and applied to promote its underlying purposes and policies, which are to protect consumers. [Cit.]" *Standish v. Hub Motor Co.*, 149 Ga. App. 365, 366 (254 SE2d 416) (1979); OCGA § 10-1-391 (a). In order to ensure that consumers are protected as the Act contemplates, such Act must be strictly enforced against the business which engages in unfair or deceptive acts or practices that this Act seeks to prohibit.

The Fair Business Practices Act was amended by Ga. L. 1989, p. 1606, § 2, to include health spa memberships. Such amendment, currently codified as OCGA § 10-1-393.2, set up provisions with which all health spas must comply. Welch entered into the contract on January 21, 1997, and therefore, the contract is subject to the requirements of OCGA § 10-1-393.2.

Subsection (e) of the statute addresses the consumer's right to cancel a health spa contract and requires that each health spa contract *shall* contain the following paragraphs *separated from all other paragraphs*:

"You (the buyer) have seven *business* days to cancel this contract. To cancel, mail or hand deliver a letter to the following address:

Name of health spa

Address

City, State, Zip Code

Do not sign this contract if there are any blank spaces above. In the event optional services are offered, be sure that any options you have not selected are lined through or that it is otherwise indicated that you have not selected these options. It is recommended that you send your cancellation notice by registered or certified mail, return receipt requested, in order to prove that you did cancel. If you do hand deliver your cancellation, be sure to get a signed statement from an official of the spa, acknowledging your cancellation.

To be effective, your cancellation must be postmarked by midnight, or hand delivered by midnight on _____, 19__, and must include all contract forms, membership cards, and any and all other documents and evidence of membership previously delivered to you."

(Emphasis supplied.) OCGA § 10-1-393.2 (e). Such statute also provides that the health spa shall "fill in the blank spaces in the above paragraph before the consumer signs the contract." OCGA § 10-1-393.2 (e).

In this case, the contract does not comply with subsection (e). Although *most* of the required cancellation language does appear in the contract, the required language is set out in one paragraph and is not set out in three separate paragraphs as the statute requires. Further, the language in the contract regarding the buyer's rights is not separated from all other paragraphs as the statute requires. Instead, the mandated language is sandwiched between other unrelated sentences.

Finally, and most important, the statute requires that the health spa designate in the contract the month, day, and year of the last day the consumer has to cancel the contract. Instead of properly giving a specific date, however, the contract in this case indicated that a cancellation would be effective only if received by "the seventh *day* after the date of the contract specified on the front of this contract." (Emphasis supplied.) This failed to substantially comply with the requirements of the statute, i.e., that the consumer must be given a specific date as the last date to cancel the contract. Additionally, such wording is intentionally misleading, because the statute gives the consumer seven *business days* to cancel, not seven *days*. By specify-

ing business days in the statute, the General Assembly clearly intended that the consumer have more than seven consecutive days to cancel, because the term "business days" includes only the days Monday through Friday, excluding any legal holidays. See OCGA § 1-3-1 (d) (3).

"The cardinal rule of statutory construction is to ascertain the legislative intent and purpose in enacting the law and to construe the statute to effectuate that intent. [Cit.]" *Ferguson v. Ferguson*, 267 Ga. 886, 887 (1) (485 SE2d 475) (1997). While the term "business days" is not defined within the Fair Business Practices Act, it is defined within the Buying Services Act of 1975, OCGA § 10-1-590 et seq. The Buying Services Act of 1975 was passed in the same legislative session as the Fair Business Practices Act of 1975. Both Acts are codified under the same title and have a common purpose of consumer protection, allow the consumer to cancel a contract within a specified number of "business days," and require that specific language be included within the contract telling the consumer of her right to cancel. Accordingly, such Acts should be considered in pari materia in determining the intent of the General Assembly when it used the term "business days" in OCGA § 10-1-393.2. Under the Buying Services Act of 1975, the term "[b]usiness day" is defined as "any day other than a Saturday, Sunday, or legal holiday." OCGA § 10-1-591 (2). Therefore, it is clear that the General Assembly did not intend to include Saturday, Sunday, or a legal holiday in the computation of the seven business days within which the consumer had to cancel a health spa membership contract under OCGA § 10-1-393.2.

Even if the contract had stated that the consumer had seven business days to cancel, this would not constitute substantial compliance with the statute, because the Act requires a specific date. Otherwise, the contract would not provide the consumer with the same protection that the General Assembly intended when it passed the statutory requirement. Under such facts, the consumer would be left in the uncertain position of having to calculate when the seventh business day would occur.

OCGA § 10-1-393.2 (n) further provides that:

[a]ny contract which does not comply with this Code section shall be *void and unenforceable*; no purchaser of any note associated with or contained in any health spa contract shall make any attempt to collect on the note or to report the buyer as delinquent to any consumer reporting or consumer credit reporting agency if there has been any violation by the health spa of subsections (b) through (m) or of subsection (o) of this Code section. Any attempt by any purchaser or by any agent of any purchaser to collect on the note or to report

the buyer as delinquent as described in this subsection shall be considered an unfair and deceptive act or practice as provided in Code Section 10-1-393.

(Emphasis supplied.) Accordingly, as the contract did not comply with the requirements of subsection (e), the contract is void and unenforceable. Georgia Receivables is prohibited from attempting to collect on such note.

Georgia Receivables argues that the trial court was without authority to find that the health spa membership contract was void and unenforceable, because such issues were not raised by either of the parties at summary judgment. We do not agree. As we have found above, OCGA § 10-1-393.2 (n) states that a contract that does not comply with subsections (b) through (m) or with subsection (o) is *void*. This is different from a contract which is voidable by one of the parties, wherein a right of rescission exists due to some defect or illegality. Black's Law Dictionary defines "voidable contract" as "[a] contract that is valid, but which may be legally voided at the option of one of the parties." Black's Law Dictionary (abridged 6th ed. 1991), p. 1087. If a contract is voidable, a party would have to assert a defense to the contract in order for the trial court to void such contract. A "void contract," however, is defined as "[a] contract that does not exist at law; a contract having no legal force or binding effect." Id.

On summary judgment, the trial court must consider the entire record. *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523 (484 SE2d 249) (1997); OCGA § 9-11-56 (c). Since the trial court has an obligation to review the entire record before rendering judgment on a motion for summary judgment, there was no error in the trial court reviewing the contract, which was part of the record, to ensure it met the requirements of OCGA § 10-1-393.2 (b)-(m) and (o).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 31, 2000.

*Frederick J. Hanna & Associates, Elizabeth C. Whealler*, for appellant.

Cheryl Welch, *pro se*.