A07A2115. 1ST NATIONWIDE COLLECTION AGENCY, INC.
v. WERNER.
(654 SE2d 428)

JOHNSON, Presiding Judge.

1st Nationwide Collection Agency, Inc. ("Nationwide") filed an action against Eileen Werner to collect a debt for medical services rendered to Werner. Werner filed counterclaims alleging Nationwide had violated the Federal Fair Debt Collection Practices Act ("FDCPA") and Georgia's Fair Business Practices Act ("FBPA"). The trial court granted Werner summary judgment as to Nationwide's collection case and set the case for a nonjury trial on Werner's claims. Nationwide failed to appear for trial, despite having been duly noticed and served. Following the nonjury trial, the trial court entered a money judgment against Nationwide for violations of the FDCPA and FBPA. Nationwide appeals. For reasons that follow, we find no error and affirm the trial court's order and judgment.

The record shows that on August 22, 2005, Spencer Recovery Centers, Inc. sent a collection letter to Werner. Spencer Recovery Centers subsequently assigned the alleged debt to Nationwide on October 28, 2005, but failed to give Werner notice of the assignment as required by OCGA § 44-12-22. From the date of the assignment

---

[2] Appellees' motion for sanctions is denied. Court of Appeals Rule 15 (b).

until the filing of the present lawsuit and beyond, Nationwide continued its collection campaign against Werner in the name of Spencer Recovery Centers, violating 15 USCS § 1692e, 1692e (2) (A), 1692e (10) and 1692e (14). In addition, Nationwide failed to give Werner notices required by 15 USCS §§ 1692g (a) (1)-(5) and 1692e (11). Nationwide also falsely represented that it made a demand upon Werner to pay the alleged debt, when in fact no such demand had been made, knowingly violating 15 USCS § 1692e, 1692e (6) (A) and 1692e (10). And, Nationwide failed to communicate the alleged debt as disputed in Werner's credit reports, despite Werner's court filings disputing the debt, knowingly violating 15 USCS § 1692e, 1692e (8) and 1692e (10).

The record further shows that even after Nationwide's collection case had been dismissed, Nationwide continued to communicate incorrect balance information which it knew to be false in Werner's credit reports, knowingly violating 15 USCS § 1692e, 1692e (2) (A), 1692e (8) and 1692e (10). And, Nationwide continued to falsely represent and communicate in Werner's credit reports that a balance was still due, knowingly violating 15 USCS §§ 1692e, 1692e (2) (A), 1692e (5), 1692e (10), 1692f and 1692f (1).

Werner testified at trial that as a result of Nationwide's collection campaign against her, she paid higher premiums for insurance, her "stellar" credit was damaged since this alleged debt is listed as the only adverse trade line on her credit report, and she was embarrassed and humiliated since Nationwide's trade line specifically lists the alleged debt as "original creditor: MED102 Spencer Recovery Center Collection Account" informing her potential creditors and employers of a past substance abuse problem. Werner also testified that she has lost employment opportunities even though she is a nationally certified teacher and that she has lost sleep and suffered emotional distress.

1. Nationwide contends the trial court erred in finding that Nationwide's violation of the FDCPA also constitutes a violation of the FBPA. We find no such error.

Nationwide erroneously suggests that the FBPA, codified at OCGA § 10-1-391 et seq., only applies to "transactions related to the deceptive sale or deceptive offer for sale of goods and services to consumers" and that Nationwide's conduct "was in no way related to the sale or offer for sale of goods and services to Georgia consumers." On the contrary, OCGA § 10-1-391 (a) specifically provides that the FBPA "shall be liberally construed and applied to promote its underlying purposes and policies." And OCGA § 10-1-391 (b) notes as follows:

It is the intent of the General Assembly that this part be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5 (a) (1) of the Federal Trade Commission Act (15 USC Section 45 (a) (1)), as from time to time amended.[1]

Here, it is undisputed that a consumer transaction occurred when Spencer Recovery Centers provided Werner medical services "primarily for personal . . . purposes."[2] Liberally construed, we find that the consumer transaction extended to the collection of Werner's alleged personal medical debt.[3] We can locate no authority, and Nationwide has cited no authority, to support its contention that the collection of a debt is not a consumer transaction. "The consumer credit industry is one of the largest financial sectors of the U. S. economy and heavily impacts the market place by affecting the general public's ability to obtain goods and services."[4] Misrepresenting consumers' financial indebtedness to others or falsely reporting consumers' credit histories has a potential adverse effect on the consumer marketplace and the economy in general. As such, collecting a debt incurred during a consumer transaction could harm the general consuming public if conducted via deceptive acts or practices and clearly falls within the parameters of the FBPA.[5]

Moreover, a violation of the FDCPA is clearly considered a violation of the Federal Trade Commission Act: "a violation of [15 USCS § 1692 et seq.] shall be deemed an unfair or deceptive act or practice in violation of [the FTC] Act."[6] So, interpreting and construing the FBPA consistently with interpretations of the Federal Trade Commission Act, the trial court correctly ruled that Nationwide's violation of the FDCPA also constituted a violation of the FBPA.

2. Nationwide contends the trial court erred in awarding treble damages under the FBPA because Werner failed to deliver a written demand for relief to Nationwide prior to the filing of the FBPA counterclaim. This claim lacks merit.

---

[1] See *Ga. Receivables v. Welch*, 242 Ga. App. 146 (529 SE2d 164) (2000).

[2] OCGA § 10-1-392 (a) (3).

[3] See *Garner v. Academy Collection Svc.*, 2005 U. S. Dist. LEXIS 43266 at *7 (III) (B) (N.D. Ga. 2005) ("Plaintiff's transactions with Capital One and Academy are consumer transactions within the FBPA's scope because they involved the sale and purchase of a service – the extension of credit and the associated administration and collection of the debt – for Plaintiff's personal or household purposes.").

[4] Id. at *8 (III) (B).

[5] See *Marrale v. Gwinnett Place Ford*, 271 Ga. App. 303, 306-310 (3) (609 SE2d 659) (2005).

[6] 15 USCS § 1692l (a).

While a party filing an "action" under the FBPA is required to file a written demand for relief at least 30 days prior to the filing of the action,[7] Nationwide has cited no cases, and we can locate no cases, mandating such a requirement when a party asserts the FBPA claim as a defense, setoff, cross-claim or counterclaim, even if the party is subsequently realigned as the plaintiff in the case. Indeed, such a requirement would likely interfere with the filing time requirements for defenses, setoffs, cross-claims and counterclaims.

3. Nationwide argues that the trial court erred in awarding treble damages pursuant to OCGA § 10-1-399 because the court did not make a specific finding in its order that Nationwide intentionally violated the FBPA. This argument lacks merit.

Throughout its order, the trial court notes that Nationwide "knowingly violated" a number of FDCPA code provisions. The court specifically found that Nationwide had actual, culpable knowledge that Werner disputed the debt as early as March 2006, yet Nationwide failed to communicate the debt as disputed in Werner's credit reports. The court specifically found that Nationwide falsely represented that it had made a demand for payment of the debt upon Werner, when it knew that no such demand had been made. The court specifically found that Nationwide had actual, culpable knowledge that the court had dismissed Nationwide's complaint in June 2006, yet Nationwide continued to communicate incorrect balance information, which it knew to be false, in Werner's credit reports, and Nationwide continued its collection campaign against Werner by falsely representing and communicating in Werner's credit reports that a balance was still due when Nationwide knew its case against Werner had been adjudicated on its merits and dismissed with a finding that no debt was owed to Nationwide. These facts clearly support the trial court's finding that Nationwide intentionally violated the FDCPA and, as discussed in Division 1 above, Nationwide's violations of the FDCPA constituted violations of the FBPA. The trial court did not err in awarding treble damages pursuant to OCGA § 10-1-399.

4. Nationwide argues that the trial court erred in awarding attorney fees and costs because the affidavit laying the foundation for these fees constitutes inadmissible hearsay. We find no merit to this argument because Nationwide has failed to meet its burden of proving error affirmatively by the record.

We first note that Nationwide was not present at trial and did not participate in the examination of Werner's counsel regarding the

[7] OCGA § 10-1-399 (b).

affidavit.[8] Moreover, "[a] party alleging error carries the burden of showing it affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed."[9] Here, Nationwide has failed to provide this Court with a transcript of the nonjury trial sufficient to enable us to determine the issue at hand. Absent a transcript of what transpired at the nonjury trial, or a reconstructed transcript approved by the trial court, we must presume that the lower court's ruling is amply supported by the evidence of record.[10] "A trial judge is presumed to have considered only legally admissible evidence,"[11] and Nationwide has presented no evidence to rebut this presumption in the instant case.

In addition, the affidavit submitted by Werner's attorneys clearly provided detailed information sufficient to enable the factfinder to determine what each of the attorneys did, to allocate the services provided between successful and unsuccessful claims, and to determine whether any services rendered were duplicative.[12] The affidavit set forth the following: (a) the actual time expended by each counsel in connection with the case, (b) the skill, experience, reputation and hourly rate of the attorneys performing services, (c) each attorneys' reasonable hourly rate, (d) the hours reasonably expended, (e) the amounts of money involved and the results obtained for the client and all Georgia consumers, (f) the awards in similar cases under the FDCPA, (g) the nature and length of the professional relationship with Werner, and (h) the preclusion of other employment opportunities due to the acceptance of the instant case. And, according to Werner's appellate brief, both of Werner's attorneys testified as to Exhibit "A" attached to the affidavit, which is a detailed billing statement of the costs incurred in the prosecution of the case. We find no reversible error.

5. Nationwide contends the trial court erred in entering an order allowing Nationwide's counsel to withdraw less than ten days after counsel filed the request to withdraw. According to Nationwide, by not waiting ten days to grant the counsel's request to withdraw,

---

[8] We note that, according to Werner's appellate brief, both of Werner's trial attorneys were present at trial, submitted the affidavit prior to the beginning of trial, and provided the trial court with testimony regarding their fees and expenses.

[9] (Footnote omitted.) *Boles v. Lee*, 270 Ga. 454, 455 (1) (511 SE2d 177) (1999); *Brown v. Liberty County*, 247 Ga. App. 562, 565 (544 SE2d 738) (2001).

[10] See *Boles*, supra at 455 (2).

[11] *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693, 698 (5) (527 SE2d 293) (1999).

[12] See *Paul v. Destito*, 250 Ga. App. 631, 641-643 (9) (550 SE2d 739) (2001); *Santora v. American Combustion, Inc.*, 225 Ga. App. 771, 774-776 (3) (485 SE2d 34) (1997).

Nationwide was denied its due process right to object to the withdrawal, and this due process violation "infected" all proceedings in the case subsequent to the withdrawal. We find no error.

Notwithstanding whether Nationwide was given the appropriate objection time after the filing of its attorney's request to withdraw, we find no violation of Nationwide's due process rights sufficient to reverse the judgment in this case. Only substantial compliance with the Uniform Superior Court Rules regarding the withdrawal of attorneys is required,[13] and it is clear from the record in the present case that Nationwide had ample notice that its attorney intended to withdraw. The "Notice of Intent to Seek Order Permitting Plaintiff's Attorney to Withdraw," dated August 7, 2006 and filed on August 10, 2006, specifically states that the attorney "has given [Nationwide] written notice of her intent to withdraw on numerous occasions due to lack of cooperation including but not limited to correspondence dated June 20, 2006 and July 14, 2006," and Nationwide has not disputed receiving this written notice. In addition, Nationwide has failed to offer on appeal any objection to its attorney's withdrawal that would have warranted a different decision by the trial court.[14]

Moreover, although withdrawing counsel warned Nationwide that it could suffer adverse consequences if it failed to act on certain motions and amendments, and although opposing counsel and the trial court served Nationwide with various notices and correspondence, Nationwide failed to obtain new counsel or take any action in the case. From August 11, 2006 to January 10, 2007, Nationwide neglected the litigation by not retaining new counsel. And on January 11, 2007, Nationwide disregarded the outcome of the case by failing to appear for trial. Parties with a case in court have a duty to look after their own interests, and are bound to take notice of the time and place of trial and of when their presence is required.[15] Here, Nationwide failed to exercise due diligence in keeping apprised of its case's progress once it knew counsel's request to withdraw had been filed and granted.[16] We find no due process violation mandating reversal of the judgment in this case.

6. Nationwide asserts the trial court erred in granting judgment to Werner for conduct alleged in Counts 6, 7 and 8 of Werner's second amendment to add counterclaims. According to Nationwide, although Werner received permission from the court to file additional

---

[13] See *Potter v. Wal Computers, Inc.*, 220 Ga. App. 437, 439 (2) (469 SE2d 691) (1996).
[14] Id.
[15] See *Dunn v. Duke*, 216 Ga. App. 829, 831-832 (1) (456 SE2d 65) (1995).
[16] See *Potter*, supra.

counterclaims, Werner was restricted to only filing those counterclaims set forth in her motion and brief in support of leave to file the counterclaims. We need not reach this issue because at the time Werner filed her additional claims, the trial court had dismissed Nationwide's complaint and repositioned Werner as the plaintiff in the case. Since Werner had been repositioned as the plaintiff, she was free to add the additional claims under OCGA § 9-11-15 (a). Prior to the entry of a pretrial order, no leave of the court is required before the filing of an amended complaint which does not seek to add a new party.[17] This enumeration of error lacks merit.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED NOVEMBER 16, 2007.

*Cohen, Goldstein, Port & Gottlieb, Neil A. Moskowitz*, for appellant.

*Kaiden & Kaiden, Robert A. Kaiden, Cristina I. Kaiden*, for appellee.

---

[17] *Bonner v. Smith*, 226 Ga. App. 3, 4 (2) (485 SE2d 214) (1997).
[1] *Roberts v. State*, 232 Ga. App. 745 (503 SE2d 614) (1998).