**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 3, 2018**

# In the Court of Appeals of Georgia

A18A1778. LOVE et al. v. FULTON COUNTY BOARD OF TAX
 ASSESSORS et al.

BARNES, Presiding Judge.

This case arises out of a dispute over whether the Fulton County Board of Tax Assessors (the "Tax Board" or "Board") exercised its duty to investigate diligently and determine whether the interest of the Atlanta Falcons Stadium Co., LLC (the "Stadium Company") in the Mercedes-Benz Stadium (the "New Stadium") is subject to ad valorem property taxation. Based on that dispute, Albert E. Love and several other citizens and taxpayers of Fulton County (collectively, the "plaintiffs")[1] sued the Tax Board, the individual Tax Board members, and the Chief Appraiser of the Tax

---

[1] The plaintiffs are Love, Gregory L. Fann, Sr., Anthony Kristian Vatalaro, Catherine Rachel Flood, Peter Zyskowski, and Lynn Zyskowski.

Board (collectively, the "defendants")[2] for a writ of mandamus and injunctive and declaratory relief, and the defendants moved to dismiss the plaintiffs' petition for failure to state a claim upon which relief could be granted pursuant to OCGA § 9-11-12 (b) (6). The trial court granted the defendants' motion to dismiss for failure to state a claim and then dismissed several other pending motions as moot, including the plaintiffs' motion to have OCGA § 10-9-10 declared unconstitutional. This appeal by the plaintiffs followed.

For the reasons discussed below, we affirm the dismissal of the plaintiffs' mandamus claims and their claims for injunctive and declaratory relief brought against the Tax Board and the other defendants in their official capacities. We reverse the dismissal of the plaintiffs' claims for injunctive and declaratory relief brought against the Tax Board members and the Chief Appraiser in their individual capacities. Because we reverse the dismissal of those claims, we also reverse the trial court's

_____

[2] The Board members named in the plaintiffs' petition are Salma Ahmed, Michael Fitzgerald, Brandi Hunter, Ed London, and Royce Morris. The petition named Dwight Robinson as the Board's Chief Appraiser. The plaintiffs sued these defendants in both their official and individual capacities. A suit against an official in his or her official capacity is the same as a suit against the governmental entity itself. See *Campbell v. Goode*, 304 Ga. App. 47, 50 (2) (695 SE2d 44) (2010).

decision to dismiss as moot the plaintiffs' motion to have OCGA § 10-9-10 declared

unconstitutional.

We review de novo a trial court's ruling on a motion to dismiss. *Walker County v. Tri-State Crematory*, 292 Ga. App. 411, 411 (664 SE2d 788) (2008).

> Under OCGA § 9-11-12 (b) (6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor. Nevertheless, where the face of the complaint demonstrates that the plaintiff can prove no set of facts to support an essential element of a claim, dismissal of that claim is appropriate. Even when a complaint is liberally construed, there still must be some legal basis for recovery.

(Citations and punctuation omitted.) *Lord v. Lowe*, 318 Ga. App. 222, 223 (741 SE2d 155) (2012).

Additionally, a trial court can consider exhibits attached to and incorporated into the complaint in reviewing a motion to dismiss, and "[t]o the extent that there is

3

any discrepancy between the allegations in the complaint and the exhibits attached to it, the exhibits control." (Citations and punctuation omitted.) *Racette v. Bank of America, N. A.*, 318 Ga. App. 171, 172 (733 SE2d 457) (2012). See OCGA § 9-11-10 (c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

Guided by these principles, we turn to the plaintiffs' amended petition and the exhibits attached thereto, which state the following. The Georgia World Congress Center Authority ("the World Congress Center") is a public corporation that is an instrumentality of the State of Georgia. The World Congress Center formerly owned the Georgia Dome, the home venue of the National Football League Atlanta Falcons from 1992 until 2016. The World Congress Center now owns the New Stadium, which became the home venue of the Atlanta Falcons in 2017.

Before the selection of a site for the New Stadium, the World Congress Center and other parties associated with the Atlanta Falcons entered into certain memoranda of understanding that addressed their expectations and understanding with respect to the financing, construction, development, and operation of the New Stadium. Specifically, in April 2013, the World Congress Center, the Stadium Company, and the Atlanta Falcons Football Club, LLC (the "Club") entered into an 86-page

Memorandum of Understanding for a Successor Facility to the Georgia Dome (the "MOU"). On the same date, the aforementioned parties and the Atlanta Development Authority d/b/a/ Invest Atlanta entered into a 99-page Tri-Party Memorandum of Understanding for a Successor Facility to the Georgia Dome (the "Tri-Party MOU").

Among other things, the MOU outlined the terms of the license that the World Congress Center would grant to the Stadium Company in the New Stadium and addressed the issue of ad valorem taxes. With respect to taxation, the MOU provided that the Stadium Company "will be responsible for the payment of any and all applicable taxes on the NSP [New Stadium Project] and its operations." However, the MOU further provided that the Stadium Company's "interest in the NSP will constitute a usufruct"[3] and that neither the World Congress Center nor the Stadium

---

[3] Under Georgia law, a usufruct (in contrast to an estate for years) is not subject to ad valorem taxation. *City of College Park v. Paradies-Atlanta, LLC*, 346 Ga. App. 63, 65 (2) (815 SE2d 246) (2018).

> A usufruct is created when the owner of real estate grants to another person the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor. In such a case, no estate passes out of the landlord and the usufruct may not be conveyed except by the landlord's consent, nor is it subject to levy and sale. A usufruct has been referred to as merely a license in real property, which is defined as authority to do a particular act or series of acts on land of another without possessing any estate or interest therein. By way of contrast, an estate for years, which does not involve the landlord-tenant relationship, carries with it the right to use the property in as absolute a

Company "expect any ad valorem taxes to be payable with respect to their respective interests in such real property and improvements for the NSP, and neither Party will in any event assume or undertake any ad valorem tax responsibilities or liabilities of the other." The MOU also stated that, as a condition to its obligation to consummate the initial closing of the deal, the Stadium Company

> shall have received confirmation from the Fulton County Board of Tax Assessors or other appropriate governmental authority in form reasonably satisfactory to [the Stadium Company] that [the Stadium Company's] and the Club's rights with respect to the NSP under the License Agreement and related agreements will constitute a usufruct.

Subsequently, during a regular board meeting conducted on August 22, 2013, the Tax Board addressed whether the real and personal property interests referenced in the MOU and the Tri-Party MOU would be subject to ad valorem taxation. The Tax Board unanimously approved and issued a Statement of Intent to Exempt Real and Personal Property (the "Statement of Intent"), which provided:

---

manner as may be done with a greater estate and is subject to ad valorem taxation.
(Citations, punctuation, and emphasis omitted.) Id.

6

Based on the [MOU] and the [Tri-Party MOU], and pursuant to OCGA § 10-9-10,[4] it is the intent of the Fulton County Board of Assessors to recognize the exempt status to the real and business personal property included in the Memorandums of Understanding and the lease/license of the stadium property including all buildings, parking areas and other real and personal property to be constructed and utilized under the terms of the lease/license.

---

[4] OCGA § 10-9-10 provides:
It is found, determined, and declared that the creation of the authority [defined in OCGA § 10-9-3 (1) as the World Congress Center] and the carrying out of its corporate purposes are in all respects for the benefit of the people of this state and are public purposes and that the authority will be performing an essential governmental function in the exercise of the powers conferred upon it by this chapter. The authority shall be required to pay no taxes or assessments upon any property acquired or under its jurisdiction, control, possession, or supervision or upon its activities in the development, construction, operation, or maintenance of any of the projects or facilities erected, maintained, or acquired by it or any fees, rentals, or other charges for the use of such facilities or other income received by the authority and shall not be subject to regulation of its activities in the acquisition, development, construction, operation, or maintenance of any of the projects or facilities acquired, developed, constructed, operated, or maintained by it by any county or municipal corporation of this state. The exemption from taxation provided for in this Code section shall include an exemption from sales and use tax on tangible personal property purchased by the authority for use exclusively by the authority. The revenue bonds or other evidence of indebtedness issued by the authority, their transfer, and the income therefrom shall at all times be exempt from taxation within this state by the state or its municipalities or political subdivisions.

This exemption will take effect upon commencement of construction of the stadium and remain in effect throughout the term of the lease/license agreement provided that the terms of the Memorandums of Understanding are not altered and the lease/license does not substantially change the terms and conditions of the Memorandums of Understanding. Any changes or alterations of such Memorandums of Understanding or lease/license agreements will be subject to review by the Fulton County Board of Assessors to ensure that such changes do not alter the relationship of the parties substantially that would create a change that would render the property taxable under Georgia law.

Subsequent to the Tax Board's issuance of the Statement of Intent, on May 18, 2015, the World Congress Center and the Stadium Company executed a Stadium License and Management Agreement (the "SLM Agreement"), which, among other things, granted the Stadium Company an exclusive license to use and occupy the New Stadium and detailed the terms of that license. The SLM Agreement stated that it was only intended to grant the Stadium Company a usufruct to use and occupy the New Stadium and was not intended to transfer an estate or other real property interest.

Following the parties' execution of the SLM Agreement, the New Stadium was completed and became operational in August 2017. The Tax Board did not assess ad valorem taxes on the Stadium Company's interest in the New Stadium.

8

The plaintiffs are citizens of the State of Georgia who own real property and pay ad valorem taxes in Fulton County. In October 2017, they filed a petition for a writ of mandamus and other relief against the Tax Board and against the Board's members and the Board's Chief Appraiser in their individual and official capacities. Attached as exhibits to the petition, as twice amended, were the MOU, the Tri-Party MOU, the SLM Agreement, the Statement of Intent, and the minutes from the August 22, 2013 Tax Board meeting.

The plaintiffs' amended petition alleged, among other things, that the Tax Board was obligated to investigate, identify, and assess the fair market value of all property in Fulton County subject to ad valorem taxes, and that the Board had failed to carry out these duties with respect to the property interest of the Stadium Company in the New Stadium. According to the petition, the interest conveyed by the World Congress Center to the Stadium Company in the SLM Agreement was a leasehold interest or an estate for years subject to ad valorem taxation rather than a non-taxable usufruct or license interest.

The plaintiffs sought mandamus relief to require the defendants to exercise their duties pertaining to tax assessment, including the duty "to investigate and identify" the taxable property interest of the Stadium Company in the New Stadium.

The plaintiffs also sought temporary and permanent injunctive relief to enjoin the defendants from implementing the Statement of Intent by recognizing the property interest of the Stadium Company as tax exempt; a declaratory judgment that the SLM Agreement transferred a taxable leasehold interest or estate of years to the Stadium Company rather than a non-taxable usufruct; and a declaratory judgment that OCGA §10-9-10, relied upon by the Tax Board in the Statement of Intent, was unconstitutional because the statute was never approved by statewide referendum.

The defendants answered and filed a motion to dismiss the plaintiffs' amended petition for failure to state a claim upon which relief could be granted under OCGA § 9-11-12 (b) (6). While the motion to dismiss was pending, the parties filed several other motions, including a motion by the plaintiffs to have OCGA § 10-9-10 declared unconstitutional.

Following a hearing, the trial court entered its order granting the defendants' motion to dismiss the plaintiffs' amended petition for failure to state a claim and dismissing all other motions as moot. In granting the motion to dismiss, the trial court held that the plaintiffs' claims for mandamus relief failed as a matter of law because the Tax Board had exercised its public duty and determined that the Stadium Company's interest in the New Stadium was not subject to ad valorem taxation, and

10

the plaintiffs improperly sought to direct the manner in which the Tax Board exercised its discretion. The trial court further held that the plaintiffs' mandamus claims against the Board members and the Chief Appraiser in their individual capacities were barred by official immunity; that their claims for injunctive and declaratory relief against the Tax Board and other defendants in their official capacities were barred by sovereign immunity; and that their claims for injunctive and declaratory relief against the Board members and Chief Appraiser in their individual capacities were barred by official immunity. The plaintiffs now appeal.

1. At the outset, the plaintiffs contend that the trial court erred by considering matters outside of their amended petition and the exhibits attached to it in granting the defendants' motion to dismiss, without providing notice to the plaintiffs and an opportunity for them to present evidence in rebuttal. The plaintiffs emphasize that in an introductory paragraph of its order, the trial court recited that "[w]ith the benefit of oral argument, and having considered all filings in the record and the arguments of counsel," the court was granting the defendants' motion to dismiss for failure to state a claim. Based on that recitation, the plaintiffs maintain that the trial court "presumably and impermissibly considered" affidavits and other documents contained in the record in connection with other pending motions and thus improperly converted

11

the motion to dismiss into a motion for summary judgment. See *Campbell v. Ailion*, 338 Ga. App. 382, 384, n. 2 (790 SE2d 68) (2016).[5]

The plaintiffs, however, have misapplied the presumption that applies in this context. A trial court is presumed to have followed the law in rendering a decision, unless and until that presumption is rebutted. *1st Nationwide Collection Agency v. Werner*, 288 Ga. App. 457, 461 (4) (654 SE2d 428) (2007). Based on our review of the trial court's order as a whole, we conclude that the plaintiffs have not rebutted the presumption that the court followed the law and limited its consideration to the amended petition and attached exhibits in ruling on the motion to dismiss.

The trial court's findings of fact and conclusions of law contain citations only to the plaintiffs' first amended petition, second amended petition, and the attached exhibits. Moreover, the trial court expressly stated in its order that its "consideration

---

[5] As explained in *Campbell*,

Although a trial court has the option to consider evidence attached to a motion to dismiss and brief in support thereof, when it does so it converts the motion to dismiss into a motion for summary judgment, governed by OCGA § 9-11-56. In accordance with this procedure, the trial court has the burden of informing a plaintiff that it will be considering exhibits attached to the defendant's motion to dismiss and that the plaintiff would have no less than 30 days within which to submit his own evidence in response to the motion for summary judgment.

(Citation and punctuation omitted.) *Campbell*, 338 Ga. App. at 384, n. 2.

12

of a motion to dismiss for failure to state a claim is limited to the four corners of the complaint and any exhibits attached thereto," and the court expressly declined to consider additional documents and exhibits that had been submitted by *the plaintiffs* in response to the motion to dismiss or to convert the motion to one for summary judgment. The trial court also noted that statements made in certain affidavits filed in connection with other motions were "unnecessary to the Court's ruling today," and the court expressly stated that "the allegations set forth in the Amended Petition, the Second Amendment Petition, and the exhibits attached thereto disclose with certainty that no set of facts consistent with the allegations could be proved that would entitle the [plaintiffs] to the relief they seek."

Under these circumstances, where the body of the trial court's order reflects that the court considered only the plaintiffs' first and second amended petitions and attached exhibits in reaching its decision to grant the motion to dismiss, we decline to construe the court's generic reference to "all filings in the record" in the introductory section of its order to mean that the court impermissibly considered other evidence in ruling on the motion. The presumption that the trial court followed the law thus has not been rebutted, and the plaintiffs have failed to show that the court improperly converted the motion to dismiss into a motion for summary judgment.

13

2. The plaintiffs further argue that the trial court erred in dismissing their claims seeking a writ of mandamus against the Tax Board and the other defendants in their official capacities.[6] We disagree.

Georgia's mandamus statute provides in relevant part:

All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights[.]

OCGA § 9-6-20. "Mandamus is a remedy for improper government inaction – the failure of a public official to perform a clear duty. The writ of mandamus is properly issued only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." (Citations and punctuation omitted.) *Bibb County v. Monroe County*, 294 Ga. 730, 734 (2) (755 SE2d 760) (2014).

---

[6] The plaintiffs separately argue that the trial court made certain erroneous factual findings in its order, but pretermitting whether there were any factual errors, we affirm the trial court's dismissal of the mandamus claims for the reasons discussed infra in Divisions 2 and 3. See *Walker County*, 292 Ga. App. at 412 (dismissal of complaint will be affirmed if right for any reason).

14

The defendants have not alleged that the plaintiffs have another adequate legal remedy available to them. The sole question therefore is whether the plaintiffs' amended petition and attached exhibits, construed in their favor, would support the conclusion that they had a clear legal right to relief. "Whether a litigant has a clear legal right to the relief sought depends on the law governing the subject matter at issue," *Hansen v. DeKalb County Bd. of Tax Assessors*, 295 Ga. 385, 387 (2) (761 SE2d 35) (2014), and the burden of proving a such a right falls on the party seeking the writ of mandamus. *Alford v. Hernandez*, 343 Ga. App. 332, 339 (1) (807 SE2d 84) (2017).

A clear legal right to relief exists "where the claimant seeks to compel the performance of a public duty that an official or agency is required by law to perform," *Bibb County*, 294 Ga. at 735 (2) (b), and the duty must be "clear and well defined." (Punctuation, footnote, and emphasis omitted.) *Alford*, 343 Ga. App. at 339 (1). A clear legal right to relief can exist where an official fails to carry out a ministerial duty, see *Alexander v. Gibson*, 300 Ga. 394, 396 (794 SE2d 597) (2016), but "mandamus shall not be confined to the enforcement of mere ministerial duties." OCGA § 9-6-21 (a). As to discretionary duties, our Supreme Court has explained:

15

Where the act required by law to be done involves the exercise of some degree of official discretion and judgment upon the part of the officer charged with its performance, the writ of mandamus may properly command him to act, or, as is otherwise expressed, may set him in motion; it will not further control or interfere with his action, nor will it direct him to act in any specific manner.

(Citations and punctuation omitted.) *Bibb County*, 294 Ga. at 736 (2) (b). See *Bland Farms, LLC v. Ga. Dept. of Agriculture*, 281 Ga. 192, 193 (637 SE2d 37) (2006) ("Mandamus can be used to compel an official to exercise his or her discretion, but not to direct the manner in which that discretion is exercised.").

In opposing the defendants' motion to dismiss, the plaintiffs argued that their petition stated a claim for mandamus relief based on OCGA § 48-5-299 (a), which provides in relevant part: "It shall be the duty of the county board of tax assessors to investigate diligently and to inquire into the property owned in the county for the purpose of ascertaining what real and personal property is subject to taxation in the county and to require the proper return of the property for taxation."[7] According to

---

[7] OCGA § 48-5-299 (a) provides in its entirety:
It shall be the duty of the county board of tax assessors to investigate diligently and to inquire into the property owned in the county for the purpose of ascertaining what real and personal property is subject to taxation in the county and to require the proper return of the property for

16

the plaintiffs, the Tax Board had a non-discretionary duty under OCGA § 48-5-299 (a) to investigate diligently and determine whether property in the county was subject to ad valorem taxation, and they contended that their amended petition and exhibits reflected that the Tax Board never exercised that duty because it allegedly never reviewed the SLM Agreement to determine whether the Stadium Company's interest in the New Stadium was taxable. Consequently, the plaintiffs asserted that if their amended complaint was accepted as true, they were entitled to a writ of mandamus compelling the defendants to investigate diligently and determine whether the Stadium Company's interest in the New Stadium was subject to ad valorem taxation based on the SLM Agreement.

------

taxation. The board shall make such investigation as may be necessary to determine the value of any property upon which for any reason all taxes due the state or the county have not been paid in full as required by law. In all cases where the full amount of taxes due the state or county has not been paid, the board shall assess against the owner, if known, and against the property, if the owner is not known, the full amount of taxes which has accrued and which may not have been paid at any time within the statute of limitations. In all cases where taxes are assessed against the owner of property, the board may proceed to assess the taxes against the owner of the property according to the best information obtainable; and such assessment, if otherwise lawful, shall constitute a valid lien against the property so assessed.

17

The plaintiffs failed to state a mandamus claim under the circumstances of this case. As an initial matter, that statute affords the Tax Board discretion in the process it follows to investigate and inquire into whether property is subject to ad valorem property taxation. In this respect, OCGA § 48-5-299 (a) provides that the Tax Board is to "investigate diligently" to determine whether property should be taxed, but that term is not statutorily defined, and where the "statute prescribes no particular process by which the [agency] is to receive evidence and reach a decision, these matters fall within the [agency's] discretion." *Bibb County*, 294 Ga. at 738 (2). And, when the agency is afforded discretion in the manner in which it conducts an investigation, mandamus cannot be used "to direct the manner in which that discretion is exercised." (Citation and punctuation omitted.) *R.A.F. v. Robinson*, 286 Ga. 644, 646 (1) (690 SE2d 372) (2010).

Given that the Tax Board is afforded discretion in how to conduct an investigation, mandamus relief would be appropriate only if the Board failed entirely to conduct an investigation and reach a decision regarding the tax status of the Stadium Company's interest in the New Stadium. See *Bibb County*, 294 Ga. at 735 (2) (b). However, the plaintiffs' amended petition and attached exhibits disclose with certainty that the Tax Board investigated the taxability of the Stadium Company's

18

interest and reached a decision on that question. In this regard, the Statement of Intent and the minutes from the August 22, 2013 Tax Board meeting attached to the plaintiffs' amended petition reflect that the Board reviewed the MOU and the Tri-Party MOU, determined that the interest of the Stadium Company was not subject to ad valorem taxation, and specified that the Board's decision would "take effect upon commencement of construction of the [New Stadium]" and remain in effect throughout the term of the parties' agreement, with the caveat that any substantial changes in the final agreement reached by the parties could lead the Board to reconsider its decision.

Accordingly, as reflected by the amended petition and attached exhibits, there was not a total failure by the Tax Board to investigate and reach a decision, and mandamus relief would not be an appropriate mechanism to compel the Board to conduct its investigation in a particular manner under OCGA § 48-5-299 (a). See *Bibb County*, 294 Ga. at 738 (2) (mandamus relief inappropriate to control manner in which review process was conducted, where Secretary of State had discretion in deciding how to receive evidence and reach a decision); *R.A.F.,* 286 Ga. at 646 (1) (mandamus could not be used to compel the defendant agencies to reopen their investigations and conduct them in a particular manner). Compare *Dougherty County*

19

*v. Webb*, 256 Ga. 474, 476-477 (1) (350 SE2d 457) (1986) (mandamus was proper to require county commission to exercise its duty to consider certain evidence in reaching its decision on a zoning application, where county zoning ordinance expressly stated that commission should consider such evidence as part of a multi-factor test), disapproved in part on other grounds by *City of Cumming v. Flowers*, 300 Ga. 820, 830-831 (7) (d) (797 SE2d 846) (2017). The trial court therefore committed no error in dismissing the plaintiffs' mandamus claims in accordance with OCGA § 9-11-12 (b) (6).[8]

3. The plaintiffs also contend that the trial court erred in dismissing their claims seeking a writ of mandamus against the Tax Board members and Chief Appraiser in their individual capacities. Again, we disagree. The trial court ruled that these

---

[8] Mandamus relief also can be appropriate where an official performs his or her discretionary duty in a manner so arbitrary and capricious as to amount to a gross abuse of discretion. See *Riley v. Southern LNG*, 300 Ga. 689, 691 (2) (797 SE2d 878) (2017); *Kemp v. Monroe County*, 298 Ga. 67, 72-73 (2) (779 SE2d 330) (2015). The plaintiffs did not assert in the trial court (and have not asserted in this Court) that the Tax Board grossly abused its discretion in the manner in which it investigated and reached its decision. Rather, the plaintiffs asserted in their brief opposing the motion to dismiss that such a "claim is inapplicable to this case because the [defendants] have never officially exercised the duty imposed, arbitrarily, capriciously, or otherwise." "Our appellate courts are courts for the correction of errors of law committed in the trial court," and "this Court refuses to review issues not raised in the trial court." (Citation and punctuation omitted.) *Lowery v. Atlanta Heart Assoc.*, 266 Ga. App. 402, 404 (2) (597 SE2d 494) (2004).

mandamus claims failed as a matter of law based on the doctrine of official immunity. Pretermitting whether official immunity applies in this context, we conclude that these mandamus claims against the individual defendants fail as a matter of law for the same reasons discussed supra in Division 2. See *Walker County*, 292 Ga. App. at 412 (grant of motion to dismiss complaint will be affirmed if right for any reason).

4. The plaintiffs next argue that the trial court erred in dismissing their claims for declaratory and injunctive relief against the Tax Board members and Chief Appraiser in their individual capacities based on the doctrine of official immunity.[9] We agree.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual

---

[9] The trial court dismissed the plaintiffs' claims for declaratory and injunctive relief against the Tax Board and the other defendants in their official capacities on sovereign immunity grounds. The plaintiffs do not present any legal argument in their appellate brief challenging that ruling by the trial court and thus have abandoned such a challenge on appeal. See Court of Appeals Rule 25 (c) (2); *Kappelmeier v. Household Realty Corp.*, 276 Ga. App. 575, 576 (2) (623 SE2d 752) (2005). In any event, sovereign immunity clearly barred the plaintiffs' declaratory and injunctive relief claims against the Tax Board and other defendants in their official capacities. See *Lathrop v. Deal*, 301 Ga. 408, 444 (IV) (801 SE2d 867) (2017); *Olvera v. Univ. System of Ga. Bd. of Regents*, 298 Ga. 425, 427 (782 SE2d 436) (2016); *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014).

21

public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.

(Punctuation and footnotes omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). The doctrine of official immunity in its current form is predicated on Article I, Section II, Paragraph IX (d) of the Georgia Constitution, as amended in 1991, which provides in part that

all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.

See *Lathrop*, 301 Ga. at 438-444 (III) (C) (discussing adoption of 1991 constitutional amendment addressing official immunity). "This language applies to officers and employees of counties as well as those of state departments and agencies." *Morgan v. Barnes*, 221 Ga. App. 653, 654 (472 SE2d 480) (1996).

22

Notably, however, our Supreme Court has held that "Article I, Section II, Paragraph IX (d) concerns suits and liabilities of public officers for monetary damages and other retrospective relief. It does not limit the availability of prospective relief." *Lathrop*, 301 Ga. at 444 (III). Hence, the doctrine of official immunity does not bar suits for declaratory or injunctive relief brought against county officers in their individual capacities, and the trial court erred in concluding otherwise.[10] See id.

5. Lastly, the plaintiffs contend that the trial court erred in dismissing as moot their motion to declare OCGA § 10-9-10 unconstitutional. The trial court dismissed the plaintiffs' motion as moot after dismissing the plaintiffs' amended petition for failure to state a claim upon which relief could be granted. Because we held in Division 4 that the trial court erred in dismissing some of the plaintiffs' claims, including their claim for declaratory judgment brought against the defendants in their individual capacities, the plaintiffs' motion to declare OCGA § 10-9-10 unconstitutional is no longer moot. Consequently, we reverse the trial court's dismissal of the plaintiffs' motion on the ground of mootness. See *Provident Bank v. MorEquity, Inc.*, 262 Ga. App. 331, 334 (2) (585 SE2d 625) (2003).

_____

[10] The defendants moved to dismiss the plaintiffs' claims for declaratory and injunctive relief brought against them in their individual capacities solely on the ground that those claims were barred by official immunity.

*Judgment affirmed in part and reversed in part. McMillian and Reese, JJ., concur.*